VICTORIA AND DENIS M. LYSZKOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lyszkowski v. Commissioner
Docket Nos. 2102-93, 16336-93
United States Tax Court
T.C. Memo 1995-235; 1995 Tax Ct. Memo LEXIS 236; 69 T.C.M. (CCH) 2751; T.C.M. (RIA) 95235; May 31, 1995, Filed *236 Decisions will be entered for respondent. Denis M. Lyszkowski, pro se. For respondent: Susan G. Lewis. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax in the amount of $ 285,454 and an accuracy-related penalty under section 6662(a) in the amount of $ 57,091 for the taxable year 1989. Respondent also determined a deficiency in petitioners' Federal income tax in the amount of $ 375 for the taxable year 1990. These cases have been consolidated for purposes of trial, briefing, and opinion. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: 1. Whether petitioner Denis M. Lyszkowski's slot machine winnings of $ 1 million in the taxable year 1989, and $ 2,500 in the taxable year 1990, represent taxable income to petitioners; and 2. whether petitioners are liable for the accuracy-related penalty in the amount of $ 57,091 for the taxable year 1989 for a substantial understatement of income tax under section *237 6662(a) and (d). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Victoria and Denis M. Lyszkowski resided in Doylestown, Pennsylvania, when they filed the petitions in this case. Hereinafter, the term petitioner in the singular refers to petitioner Denis M. Lyszkowski. In 1989, petitioner received slot machine winnings in the amount of $ 1 million from a casino in Atlantic City, New Jersey. The corporation representing the casino where petitioner won that amount, the Boardwalk Regency Corporation, issued to petitioner a Form W-2G, but did not withhold any taxes from the winnings. Petitioners filed a joint Federal income tax return for the taxable year 1989. On that return, petitioners reported wage income in the amount of $ 19,120, taxable interest income in the amount of $ 15,562, and taxable Social Security benefits in the amount of $ 3,804. Petitioners did not report the $ 1 million slot machine winnings on their 1989 tax return. In 1990, petitioner won $ 2,500 in slot machine winnings at Harrah's Marina Hotel Casino in Atlantic *238 City, New Jersey. The casino issued to petitioner a Form W-2G but did not withhold any taxes from the winnings. Petitioners filed a joint Federal income tax return for the taxable year 1990. On that return, petitioners reported taxable interest income in the amount of $ 38,421 and taxable social security benefits in the amount of $ 3,984. Petitioners did not report the $ 2,500 slot machine winnings on their 1990 tax return. On October 16, 1991, respondent sent an Information Request to petitioners regarding the $ 1 million unreported gambling winnings for the taxable year 1989. Petitioners did not respond to this request or to other correspondence from respondent with respect to the taxable year 1989. Respondent included the $ 1 million unreported slot machine winnings in petitioners' income and, on November 5, 1992, issued a statutory notice of deficiency for the 1989 taxable year. On September 2, 1992, respondent sent an Information Request to petitioners regarding the $ 2,500 unreported gambling winnings for the taxable year 1990. Petitioners did not respond to this request. Respondent included the $ 2,500 unreported gambling winnings in petitioners' income and, on April *239 28, 1993, issued a statutory notice of deficiency for the 1990 taxable year. Petitioners never sought any legal advice to determine the reportability or taxability of the slot machine winnings. OPINION Petitioner says he is willing to pay those taxes rightfully owed, but will not "volunteer" to pay taxes where Congress does not require it. He presents a clever, but misguided, reading of the Internal Revenue Code to justify his failure to report, and pay income taxes on, his slot machine winnings. Contrary to petitioner's position, Bauman v. Commissioner, T.C. Memo. 1993-112, holds that slot machine winnings are taxable income. While the Bauman opinion goes straight to the heart of the matter, the taxability under section 61 of all income from whatever source derived, that opinion does not expressly address the various arguments raised by petitioner. Because of the warmth and fervor with which petitioner has advanced his arguments, the Court will try to answer them fully. [1]
*240 Petitioner makes essentially three arguments to support his position. First, petitioner argues that slot machine winnings are not taxable because Congress, in section 3402(q)(5), has forbidden collection of tax from that particular source. Second, petitioner contends that the Treasury Department exceeded its authority in promulgating section 7.6041-1, Temporary Proced. & Admin. Regs., 42 Fed. Reg. 1471 (Jan. 7, 1977), as amended by 42 Fed. Reg. 33286 (June 30, 1977).[2] Finally, petitioner argues that the notices of deficiency are invalid because: (1) Respondent does not have the authority to issue notices of deficiency under subtitle C, and (2) respondent violated section 601.105(j), Statement of Procedural Rules, and possibly section 7605(b). *241 Petitioner's Section 3402(g) (5) Argument
Petitioner argues that Congress determined that gambling winnings are to be taxed as wages in subtitle C of the Code, and that subtitle C specifically exempts slot machine winnings from the taxes imposed under that subtitle. He asserts that "Nowhere in the Code does it say that slot machine winnings are to be taxed in subtitle A." In subtitle C, section 3402(q), titled "Extension of Withholding to Certain Gambling Winnings", requires: Every person, including the Government of the United States, a State, or a political subdivision thereof, or any instrumentalities of the foregoing, making any payment of winnings which are subject to withholding shall deduct and withhold from such payment a tax in an amount equal to 20 percent of such payments.
Sec. 3402(q)(1). Following section 3402(q)(1) are various paragraphs defining the types of gambling winnings that are subject to such withholding and certain that are not. Specifically, paragraph (5) of section 3402(q) provides that "The tax imposed under paragraph (1) shall not apply to winnings from a slot machine, keno, and bingo." Thus, slot machine winnings clearly are exempt *242 from withholding under this section. Petitioner assumes, however, that, since the slot machine winnings are exempt from withholding of tax at the source of the winnings under section 3402(q)(5) of subtitle C, he has no obligation to report and pay taxes on the winnings as gross income under subtitle A. No such inference is to be drawn. The result petitioner seeks is contrary to a well established body of law defining income; petitioner also ignores the fact that section 3402 deals with the payers of the winnings, and not with the ultimate tax liability of the payees who receive such winnings. As will be discussed below, Congress, in enacting section 3402(q)(5), did not even discuss exempting any gambling winnings from income tax and instead focused on reporting and collection problems. Subtitle A imposes an income tax on individuals. Sec. 1. This tax is imposed on taxable income, the calculation of which begins with gross income as defined by section 61. Section 61(a) broadly defines gross income: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". (Emphasis added.) The Supreme Court has "given a liberal construction *243 to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955) (citations omitted) (speaking of sec. 22(a), predecessor of sec. 61(a)). The Code, specifically subtitle A, contains no exclusion of any gambling winnings, including slot machine winnings, from gross income. The Supreme Court has interpreted gross income to encompass "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Id. at 431. Based upon this broad definition of gross income, courts consistently have held that gambling winnings, including slot machine winnings, are includable in gross income. United States v. Monteiro, 871 F.2d 204 (1st Cir. 1989); Johnston v. Commissioner, 25 T.C. 106 (1955); Bauman v. Commissioner, supra; Whitman v. Commissioner, T.C. Memo. 1985-537; Dunnock v. Commissioner, T.C. Memo. 1980-449; see also Campodonico v. United States, 222 F.2d 310, 314 (9th Cir. 1955) *244 ("it is too well settled to require citation of authority that * * * [gambling] winnings constitute taxable income."). Taxpayers have the duty to report gambling income on their tax returns. McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961); Hochman v. Commissioner, T.C. Memo. 1986-24. In certain cases where courts have excluded slot machine winnings from taxable income, it was not because those winnings were slot machine winnings, but for some other reason. Robida v. Commissioner, 460 F.2d 1172 (9th Cir. 1972), affg. T.C. Memo. 1970-86 (slot machine winnings exempt under section 911 as earned income received by a U.S. citizen living in a foreign country); Caglia v. Commissioner, T.C. Memo. 1989-143 (slot machine winnings excluded from taxpayer's income because the winnings were not hers, but belonged to her employer). Petitioner, in support of his argument that he was not required to report his slot machine winnings and to pay tax thereon, cites Commissioner v. Obear-Nester Glass Co., 217 F.2d 56, 61 (7th Cir. 1954), *245 revg. 20 T.C. 1102 (1953), for the proposition that when the Constitution or the Congress forbids collection of tax from particular sources, gains from those sources are not taxable. Petitioner also cites Christensen v. State Tax Commission, 591 P.2d 445, 447 (Utah 1979), for its holding that, if income is exempted, it is not reportable and thus is not part of the taxpayer's gross income. Based on these two cases, petitioner argues that the exemption of slot machine winnings under section 3402(q)(5) constitutes a Congressional prohibition against the collection of tax from slot machine winnings. Petitioner confuses an exemption from the withholding requirements in chapter 24 of subtitle C of the Code with an exemption from gross income as referred to in Commissioner v. Obear-Nester Glass Co., supra, and Christensen v. State Tax Commission, supra.[3] Petitioner misapplies the principles of those two cases. Section 3402(q)(5) exempts slot machine winnings from withholding of tax at the source; it does not exempt such winnings from the income tax itself. *246 Petitioner does not see, or refuses to see, the distinction between withholding of tax (i.e., collection at the source) and the imposition of income tax on a particular source of gross income.
This Court made that distinction in Graske v. Commissioner, 20 T.C. 418, 420 (1953). In that case, we held that the withholding requirements and exemptions of section 1622 (the predecessor of section 3402) serve as a guide to employers in the determination of the amounts to be withheld from an employee's wages in approximation of the amount of taxes that the average employee ultimately will have to pay. We further held that the withholding provision does not purport to determine the number of personal exemptions which a taxpayer may deduct from his gross income to arrive at the taxable income in his return. Subtitle A defines gross income *247 and also defines any exemptions from gross income, any personal and dependency exemptions, and any deductions from gross income. This distinction is further illustrated in Bodine v. Commissioner, T.C. Memo. 1984-143. In Bodine, the taxpayer received $ 1,870 in gambling winnings from which $ 373 of tax was withheld in accordance with section 3402(q). The taxpayer argued that he was not required to report the gambling winnings in his gross income because the tax had been withheld at the source when he received payment. This Court held that taxes withheld are simply a prepayment of a part of the taxpayer's tax liability for the entire year, a prepayment for which a taxpayer receives credit under section 31(a). We required the taxpayer to report his gambling winnings under section 61(a). In this case petitioner argues the opposite of the taxpayer in Bodine, that the slot machine winnings were not taxable income to him because nothing was withheld from the winnings at the source. He states that when he filed his 1989 tax return, he reported the interest that he earned on the winnings but not the winnings themselves for this reason. [4] However, *248 the holding in Bodine still applies: Withholdings are merely a prepayment of tax and not the ultimate tax liability. Petitioner then tries to analogize these slot machine winnings to wages. He states that, like wages, all taxes due on the winnings should have been withheld at the source. He states that, if any tax is due, the casino should be forced to pay it for its gross negligence in not informing petitioner of the instructions on the back of the recipient's copy of the Form W-2G. [5]
*249 Withholding of taxes is an obligation imposed upon the payer of wages or gambling winnings in specified circumstances. Sec. 3402(a) and (q). A payer who fails to make the requisite withholding is subject to certain penalties. Secs. 6672, 7202. However, such provisions do not control the payee's liability for the tax. Church v. Commissioner, 810 F.2d 19 (2d Cir. 1987); Edwards v. Commissioner, 39 T.C. 78 (1962), affd. in part, revd. in part, and remanded 323 F.2d 751 (9th Cir. 1963). As this Court stated in Edwards v. Commissioner, "an employee cannot receive the full amount of his earnings and at the same time claim a credit for an amount which was never actually withheld from him." Id. at 83. The linchpin of petitioner's whole case is his interpretation of the following language of section 3402(q)(5): "The tax imposed under paragraph (1) shall not apply to winnings from a slot machine". (Emphasis added.) From this petitioner leaps to the conclusion that no tax applies to slot machine winnings and that Congress in fact intended to exempt slot machine winnings from income tax. *250 That conclusion is supported by neither the language of the statute nor the legislative history of section 3402(q). As to the language itself, "The tax imposed under paragraph (1)", we must see what paragraph (1) of section 3402(q) imposed. Paragraph (1) required "Every person * * * making any payment of winnings which are subject to withholding * * * [to] deduct and withhold from such payment a tax in an amount equal to 20 percent of such payment." Sec. 3402(q)(1). That is the only requirement from which slot machine winnings were exempted. Paragraph (1) places a withholding obligation on the payer (casino, etc.). Paragraph (1) neither imposes nor limits the amount of any income tax due from the payee/recipient of the winnings; the income tax is imposed under sections 1 and 61. When the payer (casino, etc.) is required to withhold tax from certain types of gambling winnings, the payer (casino, etc.) then becomes liable to pay the withheld tax to the Government. Sec. 3403. The payee/recipient from whose winnings the 20 percent tax is withheld is then entitled to a credit on his tax return for the taxes so withheld. Sec. 31(a). However, the payee may owe more tax or less *251 tax than the amount so withheld. But whether taxes are withheld or not withheld, the recipient of gambling winnings, including slot machine winnings, has gross income subject to income tax under sections 1 and 61. Section 3402(q) was added to the Internal Revenue Code by section 1207(d) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1705-1706. Although petitioner claims that Congress intended to exempt slot machine winnings from the income tax, the legislative history of the provision is wholly silent as to any such intent. The problem facing Congress was the underreporting by taxpayers of gambling winnings that were clearly taxable. Congress was trying to tighten up reporting and collection procedures for gambling income that was taxable but which was not being reported by taxpayers. Congress agreed that gambling winnings were taxable and that various winnings, including winnings in an amount over $ 600, were already subject to reporting on a Form 1099. Congress intended to provide withholding requirements for certain types of gambling income. H. Rept. 94-658 at 297 (1975), 1976-3 C.B. (Vol. 2) 695, 989; S. Rept. 94-938 at 383-384 *252 (1976), 1976-3 C.B. (Vol. 3) 49, 421-422; S. Conf. Rept. 94-1236, 1976-3 C.B. (Vol. 3) 807, 891-892. The Senate proposed extending the withholding requirements to slot machine winnings over $ 1,000. The Senate report, in pertinent part, stated: Although most wagering transactions have no tax significance since the majority of bettors end up the year with no net wagering gains, the special types of wagers mentioned above represent unique and occasional windfalls that generally produce a significant tax liability. Even with the information reporting requirements, many taxpayers do not report these winnings on their income tax returns. One source of this nonreporting of income is, for example, the use of the so-called "10 percenters" at the racetrack. A 10 percenter is a person hired by the winner to cash his ticket for 10 percent of the winnings and provide fictitious identification so that the reporting on Form 1099 is provided in a name other than that of the actual winner. These 10 percenters themselves seldom pay any income tax either by filing no tax return or claiming sufficient offsetting losses.
Explanation *253 of provision
To deal with the underreporting of gambling winnings, the committee amendment supplements the information reporting requirement with a provision for withholding on certain winnings at a 20-percent withholding rate. The House bill provision is identical to the committee amendment except for the effective date. The person making the payment of winnings subject to withholding would be required to deduct and withhold from the payment 20 percent of such payment. The withholding would be based on the entire payment rather than the amount of the winnings for ease of compliance. The winnings subject to withholding would be the proceeds of more than $ 1,000 from wagers in sweepstakes, wagering pools, or lotteries (whether or not conducted by a State or agency or instrumentality of a State). In the case of winnings other than those mentioned above, withholding is to be required on payments of more than $ 1,000 from the wagering transaction if the amount of such proceeds were at least 300 times as large as the amount wagered. This withholding requirement would also apply to winnings over $ 1,000 from slot machines. This type of winning is no different from other games *254 of chance with large payoffs because, in case of slot machines, when a payoff in excess of $ 1,000 occurs, the winner is paid by check or cash at the cashier's window rather than by, for example, in the case of a quarter machine, 4,000 quarters being paid out of the machine itself. The person who is to receive the payment of winnings subject to withholding would be required to furnish the payor with the name, address and taxpayer identification number of the person receiving the payment and of each person entitled to any portion of such payment, under penalty of perjury.
S. Rept. 94-938, supra, 1976-3 C.B. (Vol. 3) at 421-422. At some point the Senate amended its proposal and deleted winnings from slot machines, keno, and bingo from the withholding requirements. However, contrary to what petitioner suggests, Congress did not make slot machine winnings exempt from tax. The conference report made it clear that Congress was still studying whether or not to extend the withholding requirement to keno, bingo, and slot machine winnings. The conference report, in pertinent part, stated: In addition, under the conference agreement, the Internal Revenue *255 Service is to report, prior to 1979, to the House Committee on Ways and Means and the Senate Committee on Finance on the operation of the present reporting system (IRS Form 1099) as applied to winnings from keno, bingo, and slot machine winnings and is to make a recommendation whether or not such winnings should be subject to withholding. The conferees also urge that, in the interim, the Internal Revenue Service modify the reporting requirements (on IRS Form 1099) with respect to winnings from these sources. This modification should include a lower threshold for the requirement that the payor report payments to the Internal Revenue Service to the extent that current reporting practices differ from that set out in the Internal Revenue Code (sec. 6041).
S. Conf. Rept. 94-1236, 1976-3 C.B. (Vol. 3) at 892. This hardly suggests that Congress thought it was exempting slot machine winnings from the income tax. While the withholding requirement still has not been changed and the exemption from withholding still remains in effect in section 3402(q)(5), the law then and now is that all gambling winnings are taxable income to the recipients. Congress did *256 not intend to, and did not, exempt any gambling winnings, including slot machine winnings, from income tax. In this case, the payers were not obligated to withhold. Petitioner received all of his slot machine winnings. The lack of withholding does not affect petitioner's obligation to report the slot machine winnings as income under section 61. The only result is that petitioner does not have a withholding credit to offset part or all of the tax liability. Sec. 31(a). Petitioner also attempts to blame the Internal Revenue Service (IRS) for its agents' standing by when he received the winnings and then watching while he allegedly gambled away most of it, without contacting him for payment of the tax while he still had the money. Petitioner states that he has records to show he lost three-quarters of the winnings in a 2-1/2 year period. [6]
*257 Respondent's Authority to Require Information about Slot Machine Winnings
Petitioner also argues that the IRS was in error in requiring the casino to issue a Form W-2G to petitioner. Petitioner cites IRS Privacy Act Notice 609, which states that respondent's authority to ask for information is based upon section 6011. Petitioner then points to section 6011(b), [7] which authorizes the Secretary of the Treasury to require information about persons subject to the tax imposed by chapter 24 of the Code. Petitioner contends that since Congress exempted slot machine winnings from the tax imposed by chapter 24, it places him outside the reach of section 6011(b), and therefore, respondent does not have the authority to require the information statement outlined in section 7.6041-1, Temporary Proced. & Admin. Regs., with respect to slot machine winnings. Petitioner has overlooked the general rule found in section 6011(a) that gives the Secretary a vastly greater authority to request information of any person liable for any tax under the Internal Revenue Code. *258 Using a similar reasoning, petitioner argues that he was not required to report his slot machine winnings to the payer [the casino] because section 1.6011-3(c), Income Tax Regs., excepts slot machine winnings from this requirement. Section 1.6011-3(a), Income Tax Regs., requires that, except as provided in paragraph (c) of that section, any person receiving a payment with respect to a wager in a sweepstakes, wagering pool, lottery, or other wagering transaction, shall make a statement to the payer of such winnings upon the payer's demand. [8] The statement is to contain, "information (in addition to that required under section 6041(c)) as to the amount, if any, of winnings from identical wagers to which the recipient is entitled." Sec. 1.6011-3(b), Income Tax Regs. Paragraph (c) of section 1.6011-3, Income Tax Regs., provides an exception: The requirement of paragraph (a) of this section does not apply with respect to any payment of winnings -- (i) From a slot machine play, or a bingo or keno game,
*259 Petitioner is correct that his slot machine winnings are excepted from the information requirement of section 1.6011-3, Income Tax Regs., but what they are excepted from is the requirement of paragraph (a) of that same regulation (i.e., the additional information regarding winnings from identical wagers). [9] This exception does not extend to any information he may be required to supply under section 6041(c), or any other section of the Code or Regulations. Again, petitioner has misapplied the specific to the general. In this case it was in compliance with a regulation under section 6041 that the casino issued the Form W-2G. Section 7.6041-1(a), Temporary Proced. & Admin. Regs., 42 Fed. Reg. 33286 *260 (June 30, 1977), requires that every person engaged in a trade or business and making a payment in the course of such trade or business of winnings (including winnings which are exempt from withholding under section 3402(g)(5)), of $ 1,200 or more from * * * slot machine play * * * shall make an information return with respect to such payment. [Emphasis added.]
Such information return shall be made on Form W-2G, shall contain certain information, [10] and shall be filed with the IRS Service Center serving the district in which the principal place of business of the person making the return is located. Sec. 7.6041-1(c), Temporary Proced. & Admin. Regs., 42 Fed. Reg. 1471 (Jan. 7, 1977). *261 Petitioner argues that the Treasury Department issued section 7.6041-1, Temporary Proced. & Admin. Regs., to fill the void that Congress willfully left open regarding slot machine winnings and that the Treasury Department cannot write such a regulation without legal authority. Petitioner's challenge to the Treasury Department's authority to promulgate section 7.6041-1, Temporary Proced. & Admin. Regs., has no merit. It is well established that the power of the Secretary of the Treasury to issue regulations is broad. See Commissioner v. Engle, 464 U.S. 206, 226-227 (1984); United States v. Correll, 389 U.S. 299, 307-308 (1967); True v. United States, 894 F.2d 1197, 1202 (10th Cir. 1990). Specifically, section 7805(a) authorizes the Secretary to "prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." Courts will sustain regulations unless they are shown to be "unreasonable and plainly inconsistent with the revenue statutes," and such regulations *262 "should not be overruled except for weighty reasons". Fulman v. United States, 434 U.S. 528, 533 (1978); Bingler v. Johnson, 394 U.S. 741, 749-750 (1969). The use of information returns is a reasonable means for the IRS to ensure compliance with the tax laws. Thus, in this case, the Treasury Department is within its authority to require petitioner to make a statement to the casino regarding his slot machine winnings and to require the casino to file a Form W-2G pursuant to section 6041. In fact, it appears to the Court that the Secretary of the Treasury, in this instance, simply followed the directions given by Congress at the time it enacted section 3402(q). See S. Conf. Rept. 94-1236 (1976), 1976-3 C.B. (Vol. 3) at 892, and the language from the Conference Report quoted above. [11]
*263 Validity of the Notices of Deficiency
Petitioner argues that respondent improperly issued the notices of deficiency in this case. He states that section 301.6212-1, Proced. & Admin. Regs., limits the jurisdiction of respondent to issue a notice of deficiency to those deficiencies arising from taxes imposed by subtitle A or B. Therefore, petitioner argues, respondent did not have jurisdiction to issue a notice of deficiency in this case because, not only did Congress place gambling winnings in subtitle C to be taxed as wages, but it also exempted slot machine winnings from the tax imposed by subtitle C. This argument must fail for, as discussed above, slot machine winnings are taxable under sections 1 and 61 of subtitle A. Petitioner continues his argument that the notice of deficiency for taxable year 1989 is invalid by alleging that respondent acted in violation of section 601.105(j), Statement of Procedural Rules. That section states that respondent does not reopen any cases closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer. [12] Sec. 601.105(j)(1), Statement of Procedural Rules. Petitioner contends that *264 his Individual Master File (IMF) transcript [13] indicates that respondent opened and examined his file, closed the case, then reopened it and made an unfavorable adjustment. *265 In support of this argument, petitioner points to the following entries on the IMF: 425 021093 -- 9307 23277-041-20000-3 SOURCE- ORG- PROJ- RET REQ-1 PTR DO- 420 022293 -- 9309 23277-053-00000-3 AIMS #0002000023 520 022493 -- 9309 23277-055-00000-3 COLCLOS -72 PROC- CLAIM- PYMT- A0273 CSED EXTENSION- BLLC-73 Petitioner interprets these entries as follows: (1) 425 -- case was closed, (2) 420 -- reopened, and (3) 520 -- respondent made an unfavorable adjustment by proceeding with litigation. IRS Document 5576 translates the codes as follows: 425 Reversed TC 424 [Note: 424's title is Examination Request Indicator] 420 Examination Indicator 520 IRS Litigation
Respondent asserts that this case has never been closed and that section 601.105(j), Statement of Procedural Rules, does not apply. Respondent contends that petitioners have misconstrued the dates and codes on their IMF. Respondent explains that these February 1993 entries do not indicate that the 1989 year was opened, closed, and reopened. The 1989 taxable year was originally opened when respondent sent the Information Request to petitioners on October 16, 1991. When petitioners failed to respond *266 to that request and subsequent inquiries from respondent, respondent issued the statutory notice of deficiency on November 5, 1992. Respondent indicates that, after a statutory notice of deficiency has been issued, it is too late for respondent to close and reopen a case. Respondent further explains that the "520" IRS litigation code merely indicates that information had been received that petitioners had petitioned this Court and that, internally, the case should go to the appeals division. In any event, these IMF transactions occurred after the issuance of the notice of deficiency for 1989 on November 5, 1992, and after petitioners had filed their petition in this Court on January 19, 1993. It is clear that respondent has not changed her determination of petitioner's liability from the time of the information request through the trial and post-trial brief. We do not see where there has been any reopening of petitioner's case or any unfavorable adjustment after a purported reopening. In any event, the procedural rule contained in section 601.105, Statement of Procedural Rules, is "merely directory, and like other similar procedural rules 'compliance with them is not essential *267 to the validity of a notice of deficiency.'" Pleasanton Gravel Co. v Commissioner, 64 T.C. 510, 529 (1975), affd. 578 F.2d 827 (9th Cir. 1978) (quoting Luhring v. Glotzbach, 304 F.2d 560, 563 (4th Cir. 1962)); Collins v. Commissioner, 61 T.C. 693, 701 (1974) (discussing Rev. Proc. 68-28, 1968-2 C.B. 912, a predecessor of Rev. Proc. 85-13, 1985-1 C.B. 514, which states the same rule); Allison v. Commissioner, T.C. Memo. 1993-35; Levin v. Commissioner, T.C. Memo. 1990-226, affd. without published opinion 930 F.2d 909 (2d Cir. 1991). Thus, even if a violation of section 601.105, Statement of Procedural Rules, had occurred, such a violation would not affect the validity of the notice of deficiency. Allison v. Commissioner, supra.
Petitioner also asks this Court to determine how section 7605(b) applies to his case. This section states: Restrictions on Examination *268 of Taxpayer. -- No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
Sec. 7605(b). The purpose of this section is "to protect taxpayers from repetitive investigations used by the Internal Revenue Service as a means of harassment." Curtis v. Commissioner, 84 T.C. 1349, 1352 (1985); see also United States v. Powell, 379 U.S. 48, 54-56 (1964); Hough v. Commissioner, 882 F.2d 1271, 1275 (7th Cir. 1989), affg. T.C. Memo. 1986-229. Petitioner has offered no evidence regarding examinations or any inspection of his books. In the words of this Court, "it is well settled that [section 7605(b)] has no bearing upon the Commissioner's authority to examine tax returns already in his possession." Pleasanton Gravel Co. v. Commissioner, 64 T.C. at 528; see also Curtis v. Commissioner, supra at 1351. *269 As a result, we hold that section 7605(b) has no application to this case. Accuracy-Related Penalty Under Section 6662
Respondent determined an accuracy-related penalty under section 6662 for the taxable year 1989. Section 6662(a) and (b)(2) imposes an addition to tax in the amount of 20 percent of any underpayment attributable to a substantial understatement of income tax. A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6662(d)(1). The deficiency in this case ($ 285,454) exceeds 10 percent of the $ 289,245 tax required to be shown on the return ($ 28,925) and thus constitutes a substantial understatement within the meaning of section 6662(d) in this case. Section 6662(d)(2)(B) provides for the reduction of the amount of the understatement by the amount which is attributable to (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
The reduction *270 of understatement provided in section 6662(d)(2)(B) is not available to petitioner. Petitioner resolutely refused to seek any legal advice as to the reportability and taxability of his $ 1 million slot machine winnings. No authority exists for his tax treatment of his winnings, nor did he make any disclosure with respect to his winnings with his 1989 return. Therefore, petitioners are liable for the section 6662 addition to tax for the taxable year 1989. Based on the foregoing, Decisions will be entered for respondent. Footnotes
1. Regretfully, the Court concludes that no analysis or exegesis of legal authorities will mollify petitioner, who only wants to hear that, for whatever reason, his $ 1 million slot machine winnings are tax free.↩
2. Sec. 6232 of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA 1988), Pub. L. 100-647, 102 Stat. 3342, 3734, added sec. 7805(e). Sec. 7805(e)(2) provides that "Any temporary regulation shall expire within 3 years after the date of issuance of such regulation." Sec. 7805(e) applies to temporary regulations issued after the date which is 10 days after the date of enactment of TAMRA 1988. See TAMRA 1988, sec. 6232(b), 102 Stat. 3735. The enactment date of TAMRA 1988 was Nov. 10, 1988. Sec. 7805(e), therefore, applies to temporary regulations issued after Nov. 20, 1988.↩
3. As petitioner chooses to ignore sec. 61, he also fails to see that exclusions from gross income must derive from provisions in subtit. A. Sec. 61(a).↩
4. Petitioner does not explain the obvious inconsistency of his reporting the interest income that also was not subject to withholding.↩
5. Petitioner states that, after he provided the information for the Form W-2G and signed it, the casino gave him copies A and D rather than the recipient's copy C. As a result, he says he did not know of those instructions printed on the back of copy C which were not also on copy A or copy D. Petitioner perceived that the Form W-2G was a notice to the Internal Revenue Service as to where the winnings went, for the purposes of the casino, not the recipient.↩
6. Sec.165(d) allows a deduction for gambling losses to the extent of gains from such transactions within the same taxable year. Sec. 1.165-10, Income Tax Regs. Petitioner has provided no documentation of his losses other than his vague, generalized testimony. Indeed, petitioner states that since his winnings are not subject to withholding, the cases cited by respondent, all of which refer to winnings subject to withholding, are inapposite, and sec. 165(d) is not applicable to his losses. In any event, since petitioner has not submitted any proof of his losses, we have no basis at all on which to determine any deduction to which petitioner may be entitled under sec. 165(d). Allowance of a loss deduction in this case would amount to sheer unguided judicial largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743↩ (1985).
7. Sec. 6011(b) reads: Identification of Taxpayer. -- The Secretary is authorized to require such information with respect to persons subject to the taxes imposed by chapter 21 or chapter 24 as is necessary or helpful in securing proper identification of such person.↩
8. This statement must accompany the payer's return made with respect to the payment as required pursuant to secs. 3402(q) or 6041, as the case may be. Sec. 1.6011-3(a), Income Tax Regs.↩
9. The purpose of sec. 1.6011-3, Income Tax Regs., is to assist payers in determining their obligation to withhold under sec. 3402(q). T.D. 7919, 1983-2 C.B. 213↩. Thus, this exception for slot machine winnings is consistent with the exception under sec. 3402(q)(5).
10. The Form W-2G shall contain the following information: (1) Name, address, and employer identification number of the person making the payment; (2) name, address, and social security number of the winner; (3) general description of two types of identification (e.g., "driver's license", "social security card", or "voter registration card") furnished to the maker to verify winner's name, address, and social security number; (4) date and amount of payment; (5) type of wagering transaction and the identification number of the slot machine. Sec. 7.6041-1(c), Temporary Proced. & Admin. Regs.↩
11. On May 15, 1995, after this opinion was drafted and awaiting release, petitioner filed a motion to reopen the trial record for the second time (see infra note 13). Petitioner sought to add additional documents in regard to the Paperwork Reduction Act of 1980 (PRA), 44 U.S.C. sec. 3501-3520 (1988), and arguments that sec. 7.6041-1(a), Temporary Proced. & Admin. Regs., 42 Fed. Reg. 1471 (Jan. 7, 1977), amended by 42 Fed. Reg. 33286 (June 30, 1977), is invalid thereunder and that there was no proper authority for IRS to require payers of slot machine winnings to obtain an information statement (for Form W-2G) from payees. The motion was denied as untimely and also as irrelevant to the issue of the taxability of slot machine winnings to the payees. For an exhaustive consideration of the PRA requirements and the arguments taxpayers have unsuccessfully advanced to try to avoid paying taxes because of purported violations of PRA, see Aldrich v. Commissioner, T.C. Memo. 1993-290↩ and cases cited therein.
12. While petitioner has stated the general rule, sec. 601.105(j), Statement of Procedural Rules, does provide for exceptions where: (i) There is evidence of fraud, malfeasance, collusion, concealment, or misrepresentation of a material fact; or (ii) The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or (iii) Other circumstances exist which indicate failure to reopen would be a serious administrative omission.↩
13. On Sept. 6, 1994, petitioners filed a Motion for Leave to Open the Trial Record and Include Petitioners' IMF & IRS Document 5576 (1992 ADP Transaction Codes). In support of their motion, petitioners explained that their Individual Master File (IMF) contains important information "that could weigh very heavily in this case". Petitioners stated that obtaining IRS Document 5576, which explains the encoded language of an IMF, from IRS officials took a long time and required many follow-up calls. Petitioners pointed out that, since the briefs were scheduled to be filed seriatim, respondent would have sufficient time within which to answer any arguments made by petitioners based upon the IMF transcript. On Sept. 18, 1994, respondent filed a notice of no objection to the granting of petitioners' motion. Therefore, the Court granted petitioners' motion and reopened the record for the limited purpose of receiving petitioners' IMF transcript and IRS Document 5576 as Ex. 7.↩