Gene McWHORTER *v.* Bernice McWHORTER

01-76 58 S.W.3d 840

Supreme Court of Arkansas
Opinion delivered November 8, 2001

*Roscopf & Roscopf, P.A.*, by: *Charles B. Roscopf*, for appellant.

*Appellee*, pro se.

R OBERT L. BROWN, Justice. Appellant Gene McWhorter (Gene) appeals from an Amended and Supplemental Order by the chancery court, which determined his average net monthly income based on averaging income for the years 1995, 1996, and 1997 and assessed an arrearage for retroactive child support for February 1997 through May 31, 1998. Gene raises five points on appeal: (1) gambling winnings are not income for child-support purposes; (2) if gambling winnings are properly included for child-support purposes, these winnings should be reduced by gambling losses; (3) the chancery court's calculations of his income

are flawed for child-support purposes; (4) the chancery court's averaging of income over three years was clearly erroneous; and (5) the chancery court's retroactive award of child support from February 19, 1997, was also clearly erroneous. We affirm in part and reverse and remand in part.

In 1993, Gene McWhorter and appellee, Bernice McWhorter (Bernice), were divorced. Gene was a self-employed trucker with one plywood client which he serviced out of West Helena. Two children had been born of the marriage — Warren Jeffrey, who was born on February 22, 1980, and Kimberly Jean, who was born on August 26, 1983. Under their divorce decree, custody was awarded to Bernice, and Gene was ordered to pay child support. In 1995, the chancery court modified its order for child support and ordered Gene to pay child support in the amount of $465.00 per month.

On February 15, 1996, appellee filed a Motion for Increase in Child Support. Two years later, a trial was held in April 1998, and on August 18, 1998, the chancery court issued a letter opinion. After including gambling winnings but not his gambling losses, the chancellor found Gene's yearly and monthly income for 1995, 1996, and 1997 to be as follows:

| Year | Yearly Income | Monthly Income |
|------|--------------|----------------|
| 1995 | $ 34,306.76 | $ 2,858.83 |
| 1996 | $ 82,737.00 | $ 6,894.00 |
| 1997 | $ 58,000.00 | $ 4,833.00 |

The court also determined that Gene's average monthly income for the three-year period was $4,862. Based on this averaging, the court increased Gene's monthly child-support payments to $1,017.00 per month. The court further ruled that Gene's payment of child support to Bernice would begin in February 1997, and it allowed credit for payments actually made. The court then awarded Bernice a judgment for the difference.

Following the issuance of the chancery court's letter opinion, but prior to judgment, Gene filed a motion for reconsideration and motion for findings pursuant to Ark. R. Civ. P. 52(a) and requested that the court revisit and enumerate the calculations it used in determining his annual income for the three-year period. The chancery court did not rule on Gene's motion, but instead issued its

order, and he appealed to the Arkansas Court of Appeals. In that appeal, Gene made the following arguments: (1) the chancery court erred in refusing to make findings of fact under Rule 52(a) as requested; (2) the chancery court erred in considering gambling profits as income; (3) the court erred in averaging income over three years; (4) the court was clearly erroneous in arriving at his income for child-support purposes; and (5) the court erred in ordering child support to be awarded retroactively. The court of appeals held that the chancery court had failed to comply with Ark. R. Civ. P. 52(a) and reversed and remanded the case for compliance with that rule. *See McWhorter v. McWhorter*, 70 Ark. App. 41, 14 S.W.3d 528 (2000).

On remand, the chancery court issued a letter opinion followed by a supplemental order. In its letter opinion, the court found the following:

> 1) No mileage on Defendant's personal truck was allowed as a business credit.

> 2) Gambling winnings were counted as spendable income[.] Defendant's gambling losses were not considered as a deduction for child support purposes.

> 3) Depreciation expenses were allowed as a legitimate business expenses [*sic*], as adjusted by Ms. Shirley Miles, C.P.A. *See Gray v. Gray*, 67 Ark. App. 202 (1999).

The chancery court then found Gene's income to be $34,306.76 for 1995, $85,914.00 for 1996, and $53,317.66 for 1997. In its Amended and Supplemental Order, the court found that Gene's average net monthly income was $4,820.47 and that based on that calculation, retroactive child support for the period February 1997 through May 31, 1998, should be $1,011.00 per month. The court further found that commencing on June 1, 1998, for one child, child support should be $699.00, and that Gene's child-support arrearages for the period February 1997 through May 1998 should be $8,736.00.

## I. Gambling Winnings

Gene first claims in his appeal that gambling winnings are not income for child-support purposes under the definition in Arkansas Supreme Court Administrative Order No. 10. The policy reason

for this is simple, he claims — gambling income is so uncertain and noncontinuous that it cannot be considered as a dependable basis for establishing child support. He contends that there is a dearth of caselaw on the issue and urges that we be guided by the definition in Administrative Order No. 10, which, he asserts, limits what constitutes income to certain defined categories.

Our standard of review for an appeal from a child-support order has been set out in a recent opinion:

> We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hunt v. Hunt*, 341 Ark. 173, [15 S.W.3d 334]. As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). However, a chancellor's conclusion of law is given no deference on appeal. *City of Lowell v. M & N Mobile Home Park Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996).

*Kelly v. Kelly*, 341 Ark. 596, 599, 19 S.W.3d 1, 3 (2000).

In order to address whether Gene's gambling winnings should be included as income for purposes of determining his child-support obligation, this court must first look to what constitutes "income" for child-support purposes. Our Family Law Code defines the term "income" as follows:

> (4)(A) "Income" means any periodic form of payment due to an individual, regardless of the source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest.

Ark. Code Ann. § 9-14-201(4)(A) (Supp. 2001). Subsection (4)(B) of that section permits this court to expand the definition "from time to time in the Guidelines for Child Support Enforcement[.]" Ark. Code Ann. § 9-14-201(4)(B) (Supp. 2001).

That is precisely what this court did with Administrative Order No. 10. In the Administrative Order, we set forth the following definition of "income":

Income means *any form of payment, periodic or otherwise*, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest *less proper deductions for:*

1. Federal and state income tax;

2. Withholding for Social Security (FICA), Medicare, and railroad retirement;

3. Medical insurance paid for dependant children, and

4. Presently paid support for other dependents by Court order.

Administrative Orders of the Supreme Court, No. 10, § II (emphasis added).[1] In construing this definition, this court has said that the definition of income included in the Administrative Order "is intentionally broad and designed to encompass the widest range of sources for the support of minor children." *Davis v. Office of Child Support Enforcement*, 341 Ark. 349, 358, 20 S.W.3d 273, 278 (2000).

██ Additional authority for this proposition can be found in the Administrative Order's section dealing with deviation considerations. In that section, the Order sets forth the relevant factors to be considered by the court in determining the appropriate amount of child support. Those factors include: "12. Other income or assets available to support the child from whatever source." Administrative Orders of the Supreme Court, No. 10, § V. Our court of appeals has had occasion to interpret subsection a.12 on at least two occasions and to include as income certain funds not specifically listed in the definition of "income." *See Office of Child Support Enforcement v. Longnecker*, 67 Ark. App. 215, 997 S.W.2d 445 (1999) (money received from part-time work included as income for child-support purposes); *Belue v. Belue*, 38 Ark. App. 81, 828 S.W.2d 855 (1992) (VA benefits included as income for child-support calculations). *See also County of Contra Costa v. Lemon*, 205 Cal. App. 3d 683, 252 Cal. Rptr. 455 (1988) (court interpreted "income from whatever source derived" to include lottery winnings though funds were not listed

---

[1] This version of the definition of income was adopted by *per curiam* order on October 1, 1997. *See In re: Administrative Order Number 10: Arkansas Child Support Guidelines*, 329 Ark. 668 (1997).

as a specific category of "income"). There is no question then that both this court and our court of appeals have interpreted the term "income" broadly for purposes of arriving at proper child support. Moreover, we are influenced by the fact that the Internal Revenue Code includes gambling winnings as part of a person's gross income for federal income tax purposes. *See* 26 U.S.C.A. § 61; *see also Lyszkowski v. Commissioner of Internal Revenue*, 69 T.C.M. (CCH) 2751 (1995); *Hall v. Commissioner of Internal Revenue*, 44 T.C.M. (CCH) 256 (1982); Rev. Rul. 83-130, 1983-2 C.B. 148.

■ Gene urges this court to follow the maxim of *expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of another. *See Black's Law Dictionary* 602 (7th ed. 1999). He raises this maxim in support of his argument that the items listed in the definition of "income" in the Administrative Order are exclusive of all others. We disagree. As already discussed in this opinion, the policy of this state is to interpret "income" broadly for the benefit of the child. Subsection a.12 of Section V of the Administrative Order referring to other income *from whatever source* confirms that. We decline to limit income only to those items listed in the definition but rather consider the list of income sources as illustrative rather than exhaustive or exclusive. *See, e.g., Masterson v. Stambuck*, 321 Ark. 391, 902 S.W.2d 803 (1995); *County of Contra Costa v. Lemon, supra.*

■ We hold that the chancery court did not abuse its discretion in including gambling winnings as income for purposes of determining child support under the Administrative Order.

## II. Gambling Losses

Gene next contends that if gambling winnings are to be included as income, then gambling losses should be credited against those winnings up to the amount of the winnings, as provided in the Internal Revenue Code. Had the chancery court permitted a credit of gambling losses against gambling winnings for purposes of determining income, Gene argues, his disposable income would have been significantly reduced.

| Year | Net Gain Due to Gambling |
|------|--------------------------|
| 1995 Winnings: | $ 15,900.00 |
| Losses: | − 14,635.00 |
| Net Gain: | $ 1,265.00 |

| 1996 Winnings: | $ 57,800.00 |
| Losses: | − 45,439.00 |
| Net Gain: | $ 12,361.00 |
| | |
| 1997 Winnings: | $ 20,900.00 |
| Losses: | − 20,900.00 |
| Net Gain: | $ .00 |

Bernice counters that the Administrative Order does not provide for that but rather limits deductions from income under § II to the following categories:

(1) federal and state income tax;

(2) withholding for Social Security, medicare, and railroad retirement;

(3) medical insurance paid for dependant children; and

(4) presently paid child support for other dependent children by court order.

 Gene's argument has merit. As was the case for determining income for child-support purposes, we do not view this list of deductions in the Administrative Order as exhaustive or exclusive. *See, e.g., Masterson v. Stambuck, supra.* We further observe that the Administrative Order provides as follows with regard to self-employed persons:

> For self-employed payors, support shall be calculated based on last year's federal and state income tax returns and the quarterly estimates for the current year. Also the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc.

Administrative Orders of the Supreme Court, No. 10, § IIIc. This subsection brings into play consideration of state and federal tax returns for self-employed individuals, which would include Gene's handling of his gambling winnings and losses in his 1040 tax returns for 1995, 1996, and 1997. In determining net gambling income for federal income tax purposes, the Internal Revenue Code provides that gambling losses can be deducted up to the amount of gambling winnings. *See* 26 U.S.C.A. § 165(d).

 ██ The federal income tax treatment of gambling gains and losses seems appropriate for child–support calculations in that our goal should be to decide what constitutes disposable income of the support obligor. In *Stepp v. Gray*, 58 Ark. App. 229, 947 S.W.2d 798 (1997), our court of appeals considered whether a depreciation deduction against income from rental properties should be denied in determining the true disposable income of the child–support payor. In doing so, the appellate court observed:

> Surely, determining the "expendable income" of a child–support payor is still the ultimate task of the chancellor following the adoption of the child–support guidelines in 1989.

58 Ark. App. at 236, 947 S.W.2d at 801. We agree with the court of appeals that determining *expendable income* is the ultimate objective of our chancery courts. For purposes of the instant case, the true expendable or disposable income can only be arrived at by crediting gambling losses only to the extent of winnings. We reverse the chancery court on this point and remand for further proceedings to prove gambling losses for the calendar years in question. In this regard, we note that while Gene's 1040 tax returns may be a starting point, documentary evidence must be presented to the chancery court to prove his gambling losses.

### III. Income Calculations

Gene next contends that the chancery court's income calculations for child–support purposes are flawed·for several reasons. First, he contends that the court included gambling winnings without crediting gambling loses, as previously discussed in this opinion. In addition, he maintains that the chancery court erred in adopting Bernice's accountant's figures instead of those by his accountant and that deductions for depreciation and other truck expenses were not fully allowed. All of this, he maintains, skewed the bottom line for disposable income and falsely depicted his income as increasing substantially when, in fact, gross income from his trucking business had been declining. He further claims that by not including gambling losses in its income calculations, the chancery court deviated from the Family Support Chart and needed to explain the deviation with written findings. He cites *Stepp v. Gray, supra*, for this proposition.

 We have previously held in this opinion that the chancery court must recompute Gene's disposable income based on gambling

losses, and we need not consider that issue again under this point. Beyond that, Gene is simply not convincing in showing how the chancery court clearly erred in calculating his expendable income so as to require additional written findings under the Administrative Order.

## IV. Three-Year Averaging

Gene next objects to the chancery court's three-year averaging of annual income in determining child support. He emphasizes that Administrative Order No. 10 does not sanction this and, indeed, provides that for self-employed payors, support must be calculated "based on last year's federal and state income tax returns and the quarterly estimates for the current year." Administrative Orders of the Supreme Court No. 10, § IIIc. Bernice's riposte is that we should not address this issue because it is being raised for the first time on appeal. Specifically, Bernice claims that Gene did not object to three-year averaging in 1995 when it benefitted him and he should not be permitted to object now when the calculations work to his detriment.

It does not appear that this issue was presented to the chancery court for resolution before the first appeal. Following the chancery court's letter opinion in 1998 but prior to entry of judgment, Gene moved for reconsideration and for additional findings of fact under Ark. R. Civ. P. 52(a). He failed, however, to question the court's three-year averaging of income at that time. In the subsequent appeal to the court of appeals, he did raise averaging as an issue, in addition to the chancery court's lapse in not making additional Rule 52(a) findings. The court of appeals reversed on the Rule 52(a) issue and remanded the matter. Only on remand did Gene raise the issue of averaging to the chancery court. At that juncture, it was simply too late to raise a new issue to the chancery court. *See Collins v. Keller*, 333 Ark. 238, 969 S.W.2d 621 (1998) (failure to object to the trial court's findings waives the opportunity to raise the issue involved on appeal).

This issue was not preserved for our review.

## V. Retroactive Award

For his final point, Gene contends that the retroactive award of child support back to February 1997 constituted an abuse of discretion. He acknowledges that a retroactive modification of child support may be appropriate in some cases under *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991), but he urges that a chancery court may not make the retroactive period earlier than the trial date without proof of the needs of the children. Here, the trial commenced on April 2, 1998. That, according to Gene, should be the starting point for a retroactive modification.

We disagree. In *Grable v. Grable, supra*, this court interpreted Ark. Code Ann. § 9-14-234(b) (Repl. 1991), in light of pertinent federal rules and concluded that the statute only prohibited modifications of child support which are made retroactive prior to the filing of the modification petition. In the case at hand, the motion for increase in child support was filed on February 15, 1996, which is clearly before the starting point for the modified support ordered to begin in February 1997. Because of the delay in resolving the motion, the chancery court stated it considered February 1997 a fairer and more appropriate beginning for modified support than February 1996. We hold that the chancery court did not abuse its discretion in starting modified child support in February 1997.

We issue one caveat for purposes of remand. Though the issue of three-year averaging was not preserved for purposes of this appeal, recalculations of disposable income are mandated by this opinion. For purposes of those recalculations, under the Administrative Order, child support is determined based on the previous year's disposable income and the quarterly estimates for the current year. *See* Administrative Orders of the Supreme Court No. 10, § IIIc.

Affirmed in part; reversed and remanded in part.