Gary MONTGOMERY *v.* Jade BOLTON

01-827                              79 S.W.3d 354

Supreme Court of Arkansas
Opinion delivered June 27, 2002

*Leverett & Watts, PLLC,* by: *Rosalyn A. Watts,* for appellant.

*Friday, Eldredge & Clark, LLP,* by: *Barry E. Coplin,* for appellee.

ROBERT L. BROWN, Judge. This is an appeal from an order of child support. The issue is whether a railroad employee, appellant Gary Montgomery, may deduct Tier II railroad-retirement withholdings from gross income under Arkansas Supreme Court Administrative Order Number 10 for the purpose of determining child support. The trial court concluded that he could not. Montgomery appeals on the basis that the trial court erred in denying the Tier II deduction. We agree, and we reverse and remand.

On December 28, 1993, Montgomery and appellee Jade Bolton, formerly Montgomery, divorced. Custody of the couple's two minor children was awarded to Bolton with visitation rights awarded to Montgomery, who was ordered to pay child support. On July 20, 2000, Montgomery filed a Motion for Contempt and for Change in Custody, and Bolton counterclaimed, requesting an increase in the amount of child support she received. On February 28, 2001, the trial court held a hearing in the matter which resulted in an order filed on April 6, 2001. In that order, the trial court found that both visitation and child support required modification. The order set forth Montgomery's visitation schedule which was decided by the agreement of the parties. The court then noted that the only disagreement between the parties was whether Montgomery was entitled to deduct his Tier II railroad-retirement withholdings in calculating his net income for child-support purposes. The trial court ruled, in pertinent part:

> The only disagreement between the parties with regard to increasing the defendant's child support obligation is whether he is entitled to deduct his Tier II railroad retirement withholdings

in calculating his net income for child support purposes. The social security equivalent of railroad retirement is Tier I. Tier II is a retirement benefit more like a pension plan, and it is not deductible in calculating net income for child support purposes. The defendant is entitled to deduct his Tier I but not Tier II railroad retirement withholdings. Based upon the defendant's net W-2 income for 2000 from the railroad, his net semi-monthly pay for child support purposes is $1,233.22. That figure is derived by allowing deductions for federal and state taxes, Tier I (but not Tier II) railroad retirement withholdings, medicare equivalent payments, and child support payments made under court order in another case. The defendant's child support obligation to the plaintiff is $144.00 per week or $312.00 per semi-monthly pay period, subject to abatement by one-half during his summer visitation with the children.

Montgomery now appeals this ruling.

Montgomery first claims on appeal that, as a railroad employee, his income is subject to certain mandatory payroll deductions, namely Tier I and Tier II retirement deductions, and that he should be able to deduct these amounts from his income in determining child support. He also asserts that the Arkansas Court of Appeals' decision in *Waldon v. Waldon*, 34 Ark. App. 118, 806 S.W.2d 387 (1991), controls in that the court held that a federal employee's automatic and involuntary contributions to a mandated retirement program were deductible because they were similar to those deductions allowed under the social security system or railroad retirement system. Montgomery points out that his Tier II deductions are also automatic and involuntary, as well as non-refundable. For these reasons, he urges that inclusion of the Tier II withholdings would not accurately reflect his disposable income and should not have been considered by the trial court in determining child support. Montgomery also contends that the trial court erred by failing to adhere to the plain language of Administrative Order No. 10. He submits that Administrative Order No. 10's use of the term "railroad retirement," in its ordinary and usually accepted meaning, encompasses both Tier I and Tier II railroad retirement benefits. He concludes that because Administrative Order No. 10 did not disallow Tier II deductions

as proper deductions, it was error for the trial court to disallow these deductions for purposes of determining child support.

Bolton responds by noting that Tier II benefits are divisible as marital property in some jurisdictions and by asserting that because Administrative Order No. 10 does not afford a deduction for pension plan contributions, it should not afford one for Tier II railroad-retirement withholdings either.[1] Bolton directs our attention to the Supreme Court Committee on Child Support's petition to revise the guidelines in 1997 and our resulting 1997 *per curiam*. She concludes that the word "equivalent" following railroad retirement was struck in that *per curiam* from Section II of Administrative Order No. 10 without explanation. She observes, however, that the word was not struck from the corresponding language in the Affidavit of Financial Means. Bolton further asserts that the fact that the word "equivalent" was retained in the affidavit "clearly indicates that no change was intended" and that dropping the word in Section II was inadvertent. As to *Waldon, supra*, Bolton counters Montgomery's argument by emphasizing that that opinion is not clear about which retirement-plan withholdings are deductible by the noncustodial parent. She adds that because the deduction at issue in *Waldon* was a minimum of seven percent, which is approximately the level of social security taxes, the *Waldon* case does not support the proposition that Tier II withholdings are deductible in addition to Tier I withholdings.

We most recently set out our standard of review in child-support cases in *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001):

> We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hunt v. Hunt*, 341 Ark. 173, [15 S.W.3d 334]. As a rule, when the amount of child support is at issue, we will

---

[1] Arkansas courts have not specifically addressed whether Tier II benefits are divisible as marital property.

not reverse the chancellor absent an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). However, a chancellor's conclusion of law is given no deference on appeal. *City of Lowell v. M & N Mobile Home Park Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996).

*McWhorter*, 346 Ark. at 480, 58 S.W.3d at 843 (quoting *Kelly v. Kelly*, 341 Ark. 596, 599, 19 S.W.3d 1, 3 (2000)). At issue in the case at hand is the meaning of the term "railroad retirement" for purposes of a deduction from income in determining child support. This court has held that the family-support chart in Administrative Order No. 10 is, in essence, a rule promulgated by our court, and, as such, it is to be construed using the same canons of construction that are used to interpret statutes. *See Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). In *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002), we set out our rules regarding statutory construction:

> The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683 (2001); *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000); *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind, supra* (citing *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994)).

*Faulkner*, 347 Ark. at 952–53, 69 S.W.3d at 400.

Section II of Administrative Order No. 10 sets forth the following definition of "income" for purposes of determining child support:

> Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, pay-

ments pursuant to a pension or retirement program, and interest .less proper deductions for:

    1. Federal and state income tax;

    2. Withholding for Social Security (FICA), Medicare, and railroad retirement;

    3. Medical insurance paid for dependent children, and

    4. Presently paid support for other dependents by Court order.

Administrative Orders of the Supreme Court, No. 10, § II (2001). This version of the definition was adopted by *per curiam* order effective October 1, 1997. *See In re: Administrative Order Number 10: Arkansas Child Support Guidelines*, 329 Ark. 668 (1997). Prior to the 1997 *per curiam*, subsection 2 of Section II referred to "railroad retirement equivalent" instead of "railroad retirement." The word "equivalent" was dropped in 1997.

■ We have said that the definition of "income" included in Section II of Administrative Order No. 10 "is intentionally broad and designed to encompass the widest range of potential income sources for the support of minor children." *Davis v. Office of Child Supp. Enforcem't*, 341 Ark. 349, 358, 20 S.W.3d 273, 278 (2000). However, we have also said that determining expendable income is the ultimate objective of the trial courts in fixing child support. *See McWhorter v. McWhorter, supra.* Moreover, we have declined to limit the types of income or permissible deductions to only those listed in Section II of Administrative Order No. 10. *See id.* Neither list, we have said, is exhaustive or exclusive. *See id.*

■ Accordingly, our first step is to construe the words just as they read, giving "railroad retirement" its ordinary and usually accepted meaning. Tier I and Tier II benefits of the Railroad Retirement Act were discussed by the United States Supreme Court in *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), in the context of divorce proceedings and the division of property:

> [The Railroad Retirement Act] provides two tiers of benefits. The upper tier, like a private pension, is tied to earnings and career service. . . . The lower, and larger, tier of benefits corresponds exactly to those an employee would expect to receive were he covered by the Social Security Act. 45 U.S.C. § 231b(a)(1).

*Hisquierdo*, 439 U.S. at 574–75. As we read it, the term "railroad retirement" in Section II of Administrative Order No. 10 is not limited to any particular Tier or to a social security equivalent. Thus, the term appears to incorporate any and all railroad-retirement programs.

Also relevant is the fact that the Tier II railroad-retirement withholding is mandatory. As a mandatory deduction, it falls within the reasoning of *Waldon v. Waldon, supra*. In *Waldon*, the court of appeals examined automatic deductions like taxes and social security for purposes of identifying what is disposable income. That is precisely the situation we have in the case before us. Tier II benefits are a mandatory withholding as conceded by Bolton in her arguments before the trial court. It is the mandatory nature of the Tier II withholdings that distinguishes them from typical pension plan withholdings, which, ordinarily, are not mandatory or deductible. Using the reasoning of *Waldon*, any inclusion of the amounts mandatorily withheld into income would not accurately reflect Montgomery's disposable income.

Bolton argues vigorously that this court "inadvertently" or "erroneously" deleted the word "equivalent" in its 1997 changes to Administrative Order No. 10. We disagree. We have said that "when the construction of a statute is at issue, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law." *R.N. v. J.M.*, 347 Ark. 203, 211, 61 S.W.3d 149, 153 (2001) (quoting *Davis v. Old Dominion Freight Line*, 41 Ark. 751, 756, 20 S.W.3d 326, 329 (2000)). The same holds true for this court. Clearly we can presume that in adopting the revision of Administrative Order No. 10 in 1997, and, specifically, the deletion of the word "equivalent," we acted with full knowledge of what we were doing. Merely because the deletion of the word "equivalent" was not explained or addressed in our *per curiam* does not mean that we acted inadvertently or erroneously. It is true that the Affidavit of Financial Means in Administrative Order No. 10 in 1997 did retain the term "equivalent" following "railroad retirement." However, in our 2002 *per curiam, In re: Administrative Order Number*

*10: Arkansas Child Support Guidelines,* 347 Ark. Appx. (Jan. 31, 2002), this court again amended Administrative Order No. 10. In that revision, the word "equivalent" remained struck after "railroad retirement" in Section II and was also struck from the Affidavit of Financial Means.

Finally, Bolton contends that because Tier II benefits are divisible as marital property in property settlements in other jurisdictions, withholdings for Tier .II plans should not be deducted for purposes of determining disposable income for child support. Again, we disagree. This court's goal should be to determine what constitutes disposable income of the support obligor. *See McWhorter v. McWhorter, supra.* As matters stand today, Montgomery has not received his Tier II benefits. Instead, his employer is withholding a certain amount from his paycheck for purposes of allowing him eventual Tier II pension benefits.

We hold that the mandatory Tier II withholdings do not form part of disposable income under the clear terms of Section II of Administrative Order No. 10 and that Tier II withholdings are part of "railroad retirement" deductions. We, therefore, reverse the order of the trial court and remand for an order to be entered consistent with this opinion.

Reversed and remanded.

GLAZE, J., concurs, *see In Re: Guidelines for Child Supp. Enforcem't,* 301 Ark. 627 (1990) (GLAZE, J., concurring). *See also, In Re: Guidelines for Child Supp. Enforcem't, supra* (HICKMAN, J., dissenting).

IMBER, J., not participating.