Shelby A. WARD, III  *v.*  Teresa Gail Ward DOSS

04-532                                                    205 S.W.3d 767

Supreme Court of Arkansas
Opinion delivered March 24, 2005

154

*William C. Plouffe, Jr.*, for appellant.

*Ronald L. Griggs*, for appellee.

Jim Hannah, Chief Justice. Shelby A. Ward, III (Shelby), appeals a decision of the Union County Circuit Court regarding child support. Shelby argues that the circuit court erred in denying his request for retroactive modification of support, in awarding the amount of past medical expenses, in failing to credit the amount of child support due based on the time the children were staying with him, and in ordering child support when each parent now has custody of one child. Jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6) because this case involves a substantial question of law regarding the validity, construction, and interpretation of Ark. Code Ann. § 9-14-237 (Supp. 2003).

## Facts

Shelby and Teresa Gail Ward (Teresa) were divorced on January 9, 1996. Custody of the Wards' three children, Maegan, Lacey, and Shelby A., IV (Shelby IV), was awarded to Teresa, and

Shelby was ordered to pay child support of $220 every two weeks. The decree also provided that while either party could insure the children, all medical and dental costs were to be shared equally.

Shelby filed a motion on August 7, 2003, requesting a change of custody for Lacey, seeking cancellation of all child support because Maegan had reached eighteen (18) years of age and finished high school, and because one of the two remaining children was living with him and the other was living with Teresa. Teresa counterclaimed for payment of past medical and dental expenses. Subsequently, on September 17, 2003, Shelby filed a motion for abatement of child support and set-off, seeking retro-active credit for child support paid for Maegan after she turned eighteen. In this same motion, he also sought a reduction in any amount the court might find that he owed Teresa by the total dollars he should have been credited over the years because under the terms of the divorce decree, child support abated by one-half any time a child stayed with him for more than two weeks.

At the trial, the evidence showed that in August 1999, Maegan moved in with her father and lived there for that school year, as well as the school years commencing in August 2000 and August 2001. While testimony showed that Maegan lived with her father for a total of 116 weeks during these three school years, Teresa's testimony showed that Maegan spent time at her house during these 116 weeks, and that she was supported in part by Teresa. Maegan turned eighteen on September 11, 2002, and had finished high school by that date. In June 2003, Lacey moved in with her father. Shelby IV still lives with Teresa.

### Standard of Review

Our standard of review for an appeal from a child-support order is *de novo* on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the wit-nesses and the weight to be accorded to their testimony. *Id.* As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. *Id.* However, a circuit court's conclusion of law is given no deference on appeal. *Id.*

In this case, we are asked to interpret Ark. Code Ann. § 9-14-237. The basic rule of statutory construction is to give

effect to the intent of the legislature. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant. *Id.* Meaning and effect are given to every word in the statute if possible. *Id.* When a statute is ambiguous, we must interpret it according to the legislative intent. *Id.* Our review becomes an examination of the whole act. We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. We also look to the legislative history, the language and the subject matter involved. *Id.*

### Retroactive Modification of Child Support/Failure to Give Notice

Shelby argues that the circuit court erred in refusing to grant him a credit for support payments he made for the benefit of Maegan after she turned eighteen. The circuit court found that Ark. Code Ann. § 9-14-237 does not automatically terminate child support obligations upon a child's eighteenth birthday. This decision was based on language in the statute that imposes on the child support obligor a duty to notify the custodial parent of an intent to discontinue child support payments for a child who has reached the age of eighteen if there are other minor children for whom support would continue. The circuit court concluded that because Shelby "did not notify Plaintiff of his intent to reduce child support . . . the abatement of child support retroactively to the birthday of Maegan is not available to Defendant."

Section 9-14-237 was amended by Act 1075 of 1999 to require that the custodial parent and physical custodian of the child, in addition to the clerk of the court, receive written notice by the obligor of termination of the obligation of child support. The same amendment provided that an obligor "may" file a motion in the circuit court requesting that child support be determined for the remaining children. This statute, prior to and after the 1999 amendment, provides that the obligation to pay child support terminates by operation of law "when the child reaches eighteen (18) years of age, or should have graduated from high school, whichever is later." In *Rogers v. Rogers*, 83 Ark. App.

206, 210, 121 S.W.3d 510 (2003), the court of appeals stated that Ark. Code Ann. § 9-14-237, "provides that an obligor's duty to pay child support for a child shall automatically terminate by operation of law when the child reaches eighteen years of age or should have graduated from high school, whichever is later." Earlier in *Office of Child Support Enforcement v. Tyra*, 71 Ark. App. 330, 334, 29 S.W.3d 780 (2000), the court of appeals held that the chancellor "did not err by calculating a reduced amount of arrearage appellee owed by taking into account those child-support obligations that had terminated by operation of law."[1] This court has not spoken on the meaning of Ark. Code Ann. § 9-14-237.

The statute provides that the duty to pay support "shall automatically terminate by operation of law." Ark. Code Ann. § 9-14-237(a)(1) (Supp. 2003). In this case, support for Maegan terminated when she reached eighteen "or should have graduated from high school, whichever is later." Ark. Code Ann. § 9-14-237(a)(1)(A) (Supp. 2003). However, the statute also provides that "[t]he obligor shall provide written notification of the termination of the duty of support to the custodial parent . . . within (10) ten days of the termination of the duty of support. Ark. Code Ann. § 9-14-237(b)(5)(A)(Supp. 2003). It further provides that "[i]f the obligor has additional child support obligations after the duty to pay support for a child terminates, then the obligor . . . may within (30) thirty days subsequent to the expiration of the ten-day period allowed for notification, as provided in (b)(5) . . . file a motion . . . requesting that the court determine the amount of the child support obligation for the remaining children." Ark. Code Ann. § 9-14-237(b)(1) (Supp. 2003). Additionally, in section (4)(A) (Supp. 2003), the statute provides that "[i]n the event a review is requested, the court shall apply the family support chart for the remaining number of children . . . ." This implies that a court review is not necessary to effectuate the termination. This is

---

[1] Prior to Act 1075 of 1999 amending Ark. Code Ann. § 9-14-237 to require notification of the custodial parent, the court of appeals in *James v. James*, 52 Ark. App. 29, 34, 914 S.W.2d 773 (1996), stated that "under Act 326 (Ark. Code Ann. § 9-14-237) appellant's child support obligation for Jacy terminated by operation of law on August 13, 1993, the effective date of the Act . . . ." Further, in *Mixon v. Mixon*, 65 Ark. App. 240, 245, 987 S.W.2d 284 (1999), the court of appeals held consistently with *James, supra*, that "appellant had no legal right to receive child support for her emancipated child when the General Assembly prescribed that support for that child would 'automatically terminate by operation of law.' "

consistent with the language in the statute that the duty to pay support shall terminate by operation of law.

The Florida District Court of Appeal stated that "[t]he term operation of law has been defined as the manner in which rights devolve upon a person by the mere application of the established rules of law, without the act or co-operation of the party himself." *Kaplus v. First Cont'l Corp.*, 711 So. 2d 108, 111 (Fla. Dist. Ct. App. 1998) (quoting *Dawson v. Dawson*, 645 S.W.2d 120, 126 (Mo. Ct. App. 1982)). Although this court has not defined the term, it appears that the definition in *Kaplus, supra,* is consistent with this court's opinions and rules. Arkansas Rule of Appellate Procedure–Civil 4 provides that in the event a party files a post-trial motion under Ark. R. Civ. P. 50 or 59, the motion will be deemed denied by operation of law if the circuit court fails to act on the motion within thirty days of its filing. *See U. S. Bank v. Milburn,* 352 Ark. 144, 100 S.W.3d 674 (2003). This is consistent with the language in the subject statute that the child support terminates by operation of law. Similarly, in *Marion County Rural Sch. Dist. 1 v. Rastle,* 265 Ark. 33, 576 S.W.2d 502 (1979), this court discussed a teacher who was not given the statutorily required notice of nonrenewal. This court stated, "We agree with the trial court that the contract was extended by operation of law for the succeeding year and the district should have been required to pay Rastle." *Rastle,* 265 Ark. at 36.

The duty to pay child support terminates by operation of law without any action by the obligor whatever when the conditions of the statute are met. The preamble to Act 326 supports this conclusion:

> An Act to require that an obligation to pay child support shall expire by operation of law under certain conditions; that the court shall reassess child support obligations for other children when an obligor's duty to pay support for a child expires; and for other purposes.

Section 9-14-237 terminates the obligation to support a child under its terms without any action on the part of the obligor. Although Ark. Code Ann. § 9-14-237(b)(5)(A) provides that notice "shall" be given it is directory rather than mandatory. This court in *Fulmer v. State,* 337 Ark. 177, 183-84, 987 S.W.2d 700 (1999) stated:

Though ordinarily the word "shall" is mandatory, and the word "may" is directory, they are often used interchangeably in legislation. *Arkansas State Highway Comm'n v. Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958). In *Mabry*, this court recognized that to carry out the legislature's intent, the word "shall" may, in certain circumstances, be construed as the equivalent of the word "may." This court concluded that if the language of the statute, considered as a whole and with due regard to its nature and object, reveals that the legislature intended the word "shall" to be directory, it should be given that meaning.

Since *Mabry*, this court has consistently held that the use of the word "shall" in a statute means that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurdity. *See Hattison v. State*, 324 Ark. 317, 920 S.W.2d 849 (1996); *Klinger v. City of Fayetteville*, 293 Ark. 128, 732 S.W.2d 859 (1987); *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986). This court has also consistently held that in determining whether a statute's provisions are mandatory or merely directory, we adhere to the principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence of the thing to be done are directory only. *See McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991); *Taggart & Taggart Seed Co., Inc. v. City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983); *Edwards v. Hall*, 30 Ark. 31 (1875).

The question then is whether the legislature intended section 9-14-237(b)(5)(A) to mandate that notice must be given before the duty to pay child support terminates. We conclude that because the duty to pay child support terminates by operation of law, the legislature did not intend that the notice provision requires mandatory or strict compliance.

■ Shelby's obligation to pay child support for Maegan expired by operation of law on September 11, 2002, when Maegan turned eighteen years old and had graduated from high school. However, Shelby's duty to provide child support for Lacey and Shelby IV remained. We must reverse and remand this issue for the circuit court to recalculate child support due under the then applicable Family Support Chart for Lacey and Shelby as of Maegan's eighteenth birthday on September 11, 2002, taking into account Shelby's income as of that date. If the amount of child support Shelby paid between September 11, 2002, and February

12, 2004, exceeds the amount he should have paid for Lacey and Shelby, he is due a credit. If not, then he owes the amount he should have paid but did not pay.

### Evidence of Medical Expenses and Failure to Give Credit for 116 Weeks

Shelby asserts that the circuit court erred in awarding medical expenses based on medical and dental bills that were never introduced into evidence. He also asserts that circuit court's decision that he receive only 75% credit for the 116 weeks that Maegan lived with him prior to her eighteenth birthday was arbitrary and error. In both instances, the evidence the circuit court relied upon was Teresa's testimony. Shelby did not object to this testimony. Admission of evidence is under an abuse of discretion standard. *Martin v. Arkansas*, 354 Ark. 289, 119 S.W.3d 504 (2003). Shelby provides no convincing authority for his arguments that the circuit court erred on these issues. This court has repeatedly held that we do not consider assignments of error that are unsupported by convincing authority. *Holcombe v. Marts*, 352 Ark. 201, 99 S.W.3d 401 (2003).

### Order of Further Child Support

The circuit court stated in its order:

> The Defendant filed his petition to Change Custody and adjust child support on August 7, 2003. His obligation to pay child support from that date to the present shall be reduced from $110.00 per week to $86.00 per week. This would result in 22 weeks at $24.00 or $528.00 for which Defendant should receive additional credit against his share of the medical expenses paid by Plaintiff.

The circuit court decided this issue based on the $110 per week child support ordered in the 1996 divorce decree. Shelby argues that the circuit court erred in computing the amount. He is correct, especially since we are remanding the case for child support obligation to be determined as of September 11, 2002, based on Shelby's income as of that date. Accordingly, we reverse and remand for recalculation based on the difference between the support obligations of Shelby and Teresa under the Family Support Chart. The order must provide the court's determination of the payors' income, reciting the amount of support required under the guidelines, and reciting whether the court has deviated from the Family Support Chart as well as, in the case of

a variance from the Chart, a justification of why the order varies as permitted under the statute. *Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003).

Affirmed in part. Reversed and remanded in part.