David BIER and Marcia Bier  *v.*
Norma MILLS

CA 06-28                                   237 S.W.3d 111

Court of Appeals of Arkansas
Opinion delivered June 14, 2006

*Jack & Holly Martin & Associates, P.A.*, by: *Ed Tarvin*, for appellants.

No response.

R OBERT J. GLADWIN, Judge. This is a one-brief appeal from an order entered by the Washington County Circuit Court denying appellants David and Marcia Bier visitation with respect to their paternal grandson,[1] T.T. (DOB 3/25/96), who is in the custody of his maternal grandmother, appellee Norma Mills. Appellants challenge the sufficiency of the evidence and allege that the trial court's decision that they have no contact with their grandson was an abuse of discretion. We affirm.

T.T.'s mother is deceased, and after various problems with his father, the trial court placed temporary custody of T.T. with

---

[1] Marcia Bier is the child's biological paternal grandmother, who married David in 2001.

appellants in December 2003. Sometime later in 2004, appellants, who live in Iowa, sent T.T. to live with his father in Eureka Springs, Arkansas, against the orders of the trial court. Upon learning of the situation, the trial court removed T.T. from his father and temporarily placed legal and physical custody of the child with appellee in November 2004. On December 14, 2004, the trial court ordered custody to remain with appellee and further determined that T.T. was to have no contact with his father and only telephone visitation with appellants to be supervised by his counselor Ross Kelly.

Visitation was sporadic, with appellants only talking to T.T. four times prior to his admission to Vista Health Services, where he received inpatient treatment from May 31, 2005, through August 26, 2005. He was diagnosed and treated for mood disorder not otherwise specified, intermittent-explosive disorder, oppositional-defiant disorder, attention-deficit-hyperactivity disorder, asthma, methicillin-resistant-staphylococcus-aureus infection, tooth abscess, problems with primary support group, problems relating to social environment, educational problems, and problems related to interaction with the legal system. He was discharged back into the custody of appellee with medication management consisting of Trileptal and Ritalin, as well as follow-up care from Dr. Richard Lloyd, his attending physician and psychiatrist, and outpatient counseling with Mr. Banyon Patterson.

Appellants filed a petition to establish grandparent visitation with respect to T.T. on March 9, 2005. Appellee was named as the respondent in the petition, and she filed a response to the petition on March 31, 2005. On April 25, 2005, the case was transferred from Circuit Judge Mark Lindsay to Circuit Judge Stacey Zimmerman, who had presided over the two previous juvenile cases involving T.T.' s custodial placement. A hearing was held on the petition on September 16, 2005. Appellants and appellee testified, along with Judith Harvey, the director of social services at Vista Health Services. At the close of the hearing, the trial court denied the petition for visitation and further ordered that appellants have no contact with T.T. The trial court issued a hand-written order at the conclusion of the hearing, and the same order was filed of record on September 20, 2005. Appellants filed a notice of appeal on October 10, 2005.

We review traditional equity cases de novo on the record and will not reverse a finding of fact by the trial judge unless it is clearly against the preponderance of the evidence. *Williams v.*

*Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003). In reviewing the trial judge's findings, we give due deference to the judge's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001).

The Arkansas Legislature passed Act 652 of 2003, § 2, effective March 25, 2003, now codified at Ark. Code Ann. § 9-13-107, which addresses the visitation rights of grandparents when a child is not in the custody of a parent as follows:

(a) For purposes of this section:

(1) "Child" means a minor under the age of eighteen (18) who is:

(A) The grandchild of the petitioner; or

(B) The great-grandchild of the petitioner; and

(2) "Petitioner" means any individual who may petition for visitation rights under this section.

(b) A grandparent or great-grandparent may petition the circuit court that granted the guardianship or custody of a child for reasonable visitation rights with respect to his or her grandchild or grandchildren or great-grandchild or great-grandchildren under this section if the child is in the custody or under the guardianship of a person other than one (1) or both of his or her natural or adoptive parents.

*(c) Visitation with the child may be granted only if the court determines that visitation with the petitioner is in the best interest and welfare of the child.*

(d)(1) An order granting or denying visitation rights to grandparents and great-grandparents under this section shall be in writing and shall state any and all factors considered by the court in its decision to grant or deny visitation.

(2)(A) If the court grants visitation to the petitioner under this section, then the visitation shall be exercised in a manner

consistent with all orders regarding custody of or visitation with the child unless the court makes a specific finding otherwise.

(B)   If the court finds that the petitioner's visitation should be restricted or limited in any way, then the court shall include the restrictions or limitations in the order granting visitation.

(3) An order granting or denying visitation rights under this section is a final order for purposes of appeal.

(4) After an order granting or denying visitation has been entered under this section, a party may petition the court for the following:

(A)   Contempt proceedings if one (1) party to the order fails to comply with the order;

(B)   To address the issue of visitation based on a change in circumstances;  or

(C)   To address the need to add or modify restrictions or limitations to visitation previously awarded under this section.

(Emphasis added.) As a rule, when the setting of visitation is at issue, we will not reverse the court absent an abuse of discretion. *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004). Abuse of discretion is discretion applied thoughtlessly, without due consideration, or improvidently. *Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004). However, a circuit court's conclusion of law is given no deference on appeal. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).

Appellants contend that the evidence presented in this matter does not support the decision of the trial court. Each of the appellants testified that they had maintained significant contact with T.T. throughout his life, including two extended summer visits with them at their home in Iowa. They also pointed out that they had temporary custody of T.T. from December 2003 through November 2004 and that T.T. was active in school, church, and sports activities while under their primary care.

Appellants explained that, at some point during October or November 2004, they allowed T.T. to move in with his father in Eureka Springs, Arkansas, despite the fact that the trial court previously had removed custody from him and placed temporary custody with them. Appellant David Bier admitted that they "sent everything we had accumulated for [T.T.] with him," in response to the trial judge's question to whether it was a "visit" rather than placing him with his father on a more permanent basis. When asked why they made such a decision, appellant David Bier stated that, "[T.T.] is a type of person that you can — and there's been too much of it — you can tell him and tell him and tell him, but until he actually, physically sees the type of situation that he wanted to go to, it's not going to do any good." This decision occurred without appellants seeking permission from the trial court and ultimately cost them custody of T.T. Both appellants testified at the hearing as to their bad judgment call in allowing T.T. to move in with his father, took responsibility for the poor decision, professed an understanding of how crucial compliance with a court order is, and agreed to abide by whatever restrictions and limitations were placed on their visitation time with T.T.

Appellee appeared pro se in the matter, and her participation in the proceeding was limited, especially with respect to questioning other witnesses. Appellee had refused to consent to a meeting between T.T.'s counselors and appellants just prior to the hearing. She testified that she was trying to direct T.T. and that he was at an age that, if not stabilized within the next two years, he would be lost "to the streets." She stated that T.T. did not need any more confusion in his life and that it was going to take T.T. the rest of his life to be able to function properly due to being raised with "[n]o restrictions, R-rated movies, sex, openly." She clarified that she meant that negative behavior occurred during the time he was living with his parents rather than during the time that he was in the custody of appellants. Appellee also testified that she knew T.T. and appellants loved each other and that she would not have a problem with contact between them, as long as it was approved and supervised by his physicians and counselors. She even went so far as to say that she believed T.T. needs contact with appellants at the appropriate time and in an appropriate manner and requested that appellants might allow six more months of letting T.T. stabilize a little bit more. The only other concern she expressed at the hearing was that appellants might dredge up the past with the child, which could be problematic for his continued progress and recovery.

Although not in evidence in this matter, appellee's response to appellants' petition for visitation rights detailed her inability "to locate the child in Iowa [in November 2004] and [the fact that she] searched for him for days." The response also stated that permanent custody was given to her because T.T.'s father is a known "meth" user and in prison for the second time on felony charges, awaiting sentencing related to drug, hot checks, and numerous other charges. The pleading also described an incident on November 2, 2004, after the last hearing in juvenile court, where she unsuccessfully tried to contact appellants at their motel room and on their cell phone for two days to obtain T.T.'s Ritalin and Trileptal medication. She also stated that the no-contact order issued on November 2, 2004, against appellants, with the exception of telephone visits supervised by T.T.'s counselor, came about after appellants began calling her home three to five times per day. She asserted that T.T. had been traumatized after speaking to appellant Marcia Bier and often had trouble sleeping, even with his medication. Finally, she stated in her response that T.T. was doing very well at his current school, after being there only five weeks, whereas he had been failing while in school in Iowa and Eureka Springs. None of these issues were developed through the testimony at trial, where appellee chose to testify but not to question the other witnesses. Her testimony suggested that she was far less adamant about keeping appellants from T.T. by the time the hearing occurred than she was at the time her initial response had been filed.

Judith Harvey testified as to T.T.'s admission, diagnosis, inpatient treatment, condition upon discharge from Vista Health Services, and recommendations for follow-up treatment. She explained that his overall diagnosis upon admission and discharge was the same, except for the methicillin-resistant-staphylococcus-aureus infection, which had been addressed with a twenty-eight day program of antibiotic treatment. She testified that by the time he was discharged, T.T. was able to function outside the inpatient status and had reached his maximum benefit of treatment during his three-month stay. T.T.'s discharge summary from Vista Health Services was admitted into the record without objection. The discharge summary also included a psychiatric summary that detailed: a history of aggression; defiant behavior; verbal and physical threats to his grandmother (appellee) and peers; physical abuse toward appellee, peers, and animals. The prognosis "for ongoing control of presenting symptoms [was listed as] fair . . . in part dependent upon [T.T.'s] willingness and ability to participate in

treatment, to comply with treatment recommendations, and take medication as prescribed . . . [as well as] the willingness and ability of [T.T.'s] family to participate in treatment and to comply with treatment recommendations."

The trial judge questioned the witnesses, and while she explored the issue of appellants allowing T.T. to move in with his father to some extent, it is clear that she relied heavily on what had occurred in the other two proceedings related to T.T.'s custody (case numbers J2003-885 and J2005-390) in making her decision regarding visitation for appellants. The trial judge even referred back to specific testimony from appellant Marcia Bier from the November 2, 2004 hearing regarding disparaging remarks made by T.T. toward her.

■ The applicable statute, Ark. Code Ann. § 9-13-107(c), is extremely discretionary in its language, stating that visitation with the child may be granted only if the court determines that visitation with the petitioner is in the best interest and welfare of the child. That said, the trial judge interjected a great deal during the hearing and relied on evidence outside the record in this matter, referring back to very specific details and testimony from the previous two cases that are not part of the record in this case. Our supreme court has stated that "judicial notice may not be taken of the record in a separate case," see Smith v. State, 307 Ark. 223, 818 S.W.2d 945 (1991), and the trial judge has most certainly done that in this case. However, the trial judge also indicated that there may come a time when T.T.'s condition stabilizes and that he might need to see appellants, leaving the door open for them to seek visitation in the future. Based upon our de novo review of the record in this matter, we cannot say that it was clearly erroneous or an abuse of discretion for the trial court to determine that visitation between appellants and T.T., at that point in time, was not in the best interest and welfare of the child. Accordingly, we affirm.

Affirmed.

ROBBINS and BIRD, JJ., agree.