Rebecca R. PRICE, Individually and as the Administratrix of the Estate of Jessica R. Price, Deceased, et al. *v.* THOMAS BUILT BUSES, INC. and Merl's Bus Sales

06-1074                                                                 260 S.W.3d 300

Supreme Court of Arkansas
Opinion delivered June 28, 2007

---

*Martin & Kieklak Law Firm*, by: *Mark L. Martin* and *Kenneth J. Kieklak*; *Odom Law Firm*, by: *Bobby Lee Odom*; *Hulsey Litigation Group, PLLC*, by: *Paul H. Hulsey* and *Cherie K. Durand*, for appellants.

*Keith, Miller, Butler & Webb, PLLC*, by: *Sean T. Keith*; *McGlinchey Stafford, PLLC*, by: *Colvin G. Norwood, Jr.*, for appellees.

ANNABELLE CLINTON IMBER, Justice. On May 19, 2003, a school bus carrying forty-three students from the Siloam Springs School District ran off the road, flipped onto its side, and slid down an embankment. One student, Jessica Price, was killed, and ten other students sustained serious injuries. At the time of the accident, the bus was not outfitted with seat belts for all of its passengers. The specifications governing school bus design promulgated by the Arkansas Department of Education do not include passenger seat belts. In a suit filed against the school bus manufacturer and distributor, the circuit court entered summary judgment, dismissing all tort claims based upon the manufacturer's failure to provide passenger seat belts. In so ruling, the court concluded that the General Assembly's decision not to require seat belts in school buses precluded a jury from deciding the issue again. Pursuant to the separation-of-powers doctrine, we agree and affirm the circuit court's summary-judgment order.

Appellants Rebecca Price, as administratrix of the Estate of Jessica Price, and the parents, as next of friends, of the ten injured students, filed suit against Appellees Thomas Built Buses, Inc., the

bus manufacturer, and Merl's Bus Sales, the bus retailer.[1] Appellants specifically pleaded that Appellees were negligent (a) in failing to warn the purchasers, users, and riders of the bus about the dangers of riding in the bus unrestrained by seat belts, (b) in failing to test the safety of the bus in side rollover accidents, (c) in failing to create a safer alternative product, and (d) in failing to recall the bus for retrofitting with seat belts. Appellants also asserted claims based on strict liability and breach of express and implied warranties. In a motion for summary judgment, Appellees asserted they could not be held liable for any alleged defect from a lack of seat belts due to their compliance with the Arkansas Department of Education's specifications for school bus design and safety. Furthermore, according to Appellees, because the General Assembly has declined to require seat belts in school buses, the issue of their negligence for failing to outfit the Siloam Springs bus with seat belts was not an issue a jury should decide. After a hearing, the circuit court granted summary judgment, concluding that the legislature has spoken to the issue of requiring seat belts on school buses, and it was not appropriate for a jury to be allowed to decide the issue again.

On appeal, Appellants allege three points of error: (1) the circuit court erred in concluding that Appellants were precluded from bringing a tort action against Appellees when Appellees had complied with the federal and state minimum safety standards, (2) the circuit court erred in concluding that the doctrine of acquired immunity applied to Appellees, and (3) the circuit court erred in deciding that there was no genuine issue of material fact as to whether the bus was defective or unreasonably dangerous for purposes of strict liability, whether the lack of seat belts on the bus was the proximate cause of Appellants' injuries, and whether there was evidence that Appellees breached the express and implied warranties. We have jurisdiction over the instant case because it involves an issue of first impression and an issue of statutory interpretation. Ark. Sup. Ct. R. 1-2 (b)(1), (6) (2007).

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] Appellants did not file any claim against the Siloam Springs School District or the school district's insurance company; nor did they file claims with the Arkansas State Claims Commission.

judgment as a matter of law" on the issue set forth in the party's motion. Ark. R. Civ. P. 56(c)(2) (2007). The burden of proving that there is no genuine issue of material fact is upon the moving party. *Windsong Enterprises, Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006). On appellate review, we must determine whether summary judgment was proper based on whether the evidence presented by the moving party left a material question of fact unanswered. *Id.* This court views the proof in the light most favorable to the party resisting the motion, resolving any doubts and inferences against the moving party, to determine whether the evidence left a material question of fact unanswered. *Id.*

The issues in the instant case necessitate our interpretation of the statutes and regulations governing the design of school buses in Arkansas. This court reviews a circuit court's interpretation of a statute de novo because it is for this court to determine what a statute means. *Morgan v. Chandler*, 367 Ark. 430, 241 S.W.3d 224 (2006). In the absence of a showing that the circuit court erred, however, this court will accept the circuit court's interpretation as correct on appeal. *Id.* The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). Where the language of the statute is plain and unambiguous, we determine the intent from the ordinary meaning of the language used. *Id.* We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When a statute is ambiguous, we must interpret it according to legislative intent. *Id.* Then, our review becomes an examination of the whole act, reconciling the provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We must also look at the legislative history, the language and the subject matter involved. *Id.* Similar rules of construction apply to the interpretation of rules and regulations. *See, e.g., Stricklin v. Hays*, 332 Ark. 270, 965 S.W.2d 103 (1998).

Under the Arkansas Constitution article 14 section 4, the General Assembly is vested with the "supervision of public schools, and the execution of laws governing the same." Ark. Const. art. 14 § 4. The General Assembly has given the State Board of Education the authority to "adopt and enforce regulations . . . to govern the design and operation of all school buses used for the transportation of school children . . . . [and] such regulations shall by reference be made a part of any contract with a school district." Ark. Code Ann. § 6-19-111(a)-(b) (Repl. 1999). Individual school

districts are authorized to use district funds to purchase buses for transporting students to school as the districts deem best, "affording safe and convenient transportation to the pupils." Ark. Code Ann. § 6-19-102(a)-(b) (Repl. 1999). More specifically, the buses "*shall* be of such *specifications* as may be prescribed by uniform rules and regulations of the State Board of Education." Ark. Code Ann. § 6-19-102(e) (Repl. 1999) (emphasis added).

When purchasing a school bus, a school district must solicit bids from sellers, and the local school board has the exclusive jurisdiction to make bus purchases. Ark. Code Ann. § 6-21-304(a) & (b)(1) (Supp. 2005). However, under section 6-21-304(b)(2) & (3), the Department of Education, in consultation with a committee of school administrators, "shall be responsible for drawing up the minimum specifications for all school buses," and under section 6-19-102(e), any bus purchased by a school board "shall be of such specifications." *See* Ark. Code Ann. §§ 6-21-304(b)(2), (3), 6-19-102(e) (Repl. 1999 & Supp. 2005).

The Arkansas Department of Education's specification for passenger seating design states that "[a]ll seats . . . must comply with all requirements of FMVSS 222." 203-00-001 Ark. Code R. § 63.00 (Weil 2004). FMVSS 222 is a federal safety standard promulgated pursuant to the Federal Motor Vehicle Safety Act (FMVSA), *see* 49 U.S.C § 30101 et seq. (2000), that provides occupant protection requirements for school bus seating and restraining barriers. *See* 49 C.F.R. § 571.222, S1 (2006). Although FMVSS 222 sets out restraining-barrier and impact-zone requirements, it does not address seat belts for school bus passengers. *See* 49 C.F.R. § 571.222 (2006).

Appellants nonetheless suggest that the Department of Education only promulgates "*minimum* specifications" for school bus design, and that, although a bus manufacturer must comply with the minimum specifications, nothing precludes manufacturers from exceeding those specifications. Appellants point out that, because the General Assembly has not spoken to the issue of seat belts on school buses, the legislature did not prevent bus manufacturers from exceeding the minimum specifications by installing seat belts. They also point out that the federal courts have not interpreted the Federal Motor Vehicle Safety Act as preempting common-law tort claims against manufacturers. Instead, the federal courts have held that compliance with minimum standards only constitutes evidence of ordinary care. *See Geier v. American*

*Honda Motor Co., Inc.*, 529 U.S. 861 (2000); *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir. 2000). Accordingly, Appellants assert that a plaintiff should be able to bring a common-law action against a manufacturer when safety measures beyond the minimum would have better protected passengers from injury.

Appellees, on the other hand, insist that the General Assembly has repeatedly addressed the issue of mandatory seat belts in school buses, deciding each time not to require seat belts. Appellees also point out that the term "specification" is not equivalent to the term "standard" — that is, standards are aspirational in nature, whereas specifications are detailed technical descriptions of design requirements. According to Appellees, the Department of Education is not a common consumer that is ignorant concerning bus safety features, and, therefore, bus manufacturers may not deviate from the exact specifications set out by the department absent a consumer's contrary request. Because Appellees assert that the legislature has spoken to the issue of mandatory seat belts in school buses, they claim that the judicial branch would violate the separation-of-powers doctrine by deciding the question again.

Although the statutes and regulations concerning school-bus designs are silent with regard to seat belts in school buses, the language of the act read as a whole indicates that a manufacturer must comply with the specifications set out by the Department of Education. Specifications are defined as "a technical description or other description of the physical or functional characteristics of a commodity." Ark. Code Ann. § 6-21-304(a)(2)(B)(i) (Supp. 2005). Any contract for the purchase of a school bus in Arkansas must contain the specifications promulgated by the Department of Education — that is, the bus must contain features that comply with the Department's technical descriptions. The term standards, on the other hand, means an "object or quality or measure serving as a basis or example or degree of excellence." *Oxford American Dictionary and Thesaurus* 814 (2d ed. 2001). Thus, contrary to the federal government's decision to adopt "standards" through the FMVSS, which serve as a basis and example for school bus design, the Arkansas legislature has chosen to adopt particular specifications that will dictate the exact physical characteristics of all school buses in Arkansas.

Appellants assert that, because Arkansas has adopted the standards under FMVSS 222 by reference, the General Assembly intended to adopt the federal courts' approach that compliance with minimum standards does not preclude common-law actions.

Appellants, however, fail to recognize that the Department of Education has adopted the safety requirements under FMVSS as a mandatory specification for Arkansas school buses:

> These rules are enacted pursuant to the authority under Ark. Code Ann. § 6-21-304 . . . . It is the purpose of these rules to establish specifications governing school bus design for the State of Arkansas . . . . All seats *shall* have a minimum cushion depth of 15 inches and *must* comply with all requirements of FMVSS 222. School bus design capacities *shall* be in accordance with FMVSS 222 . . . . All school buses (Including Type 'A') *shall* be equipped with *restraining barriers* which conform to FMVSS 222.

203-00-001 Ark. Code R. §§ 1.02, 2.01, 63.01, 63.06 (Weil 2004) (emphasis added).

Appellants further confuse the federal statutory scheme with our own when they assert that our legislature, like Congress, did not intend to preclude common-law actions against manufacturers that have complied with the minimum specifications. The federal courts have held that Congress did not intend for common-law actions to be precluded in such cases because Congress included a savings clause in the FMVSA that expressly states "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e) (2000). In contrast, no such savings clause is included in Arkansas's statutory scheme. Also, while Appellants cite to an Oklahoma case as support for their proposition, the decision by the Oklahoma Court of Appeals centered on the issue of preemption under the federal act, an issue not argued by either party in this case. *See Attocknie v. Carpenter Mfg., Inc.*, 901 P.2d 221 (Okla. Civ. App. 1995).

To the extent that any ambiguity may exist in the meaning of our state's school-bus safety statutes, it is laid to rest by the legislative history surrounding the issue of seat belts in school buses. In 1931, school districts were granted the authority to purchase school buses for the safe and convenient transportation of students to school, and, in 1937, the legislature gave the Department of Education the authority to promulgate regulations governing the design of school buses. *See* Pope's Digest § 6759(a) (1937); *see also* 1937 Ark. Acts 300 § 102 and 1931 Ark. Acts 169 § 102. From that point on, the Department of Education has never required passenger seat belts on school buses.

In 1984, following a school-bus accident near Newport, the General Assembly's Legislative Council issued a report entitled "Feasibility of Requiring School Districts to Install Seat Belts on School Buses." After discussing several national studies on the issue of mandatory passenger seat belts on school buses, the Council made a detailed list of the pros and cons for requiring seat belts in Arkansas school buses. State of Ark. Legislative Council, Feasibility of Requiring School Districts to Install Seat Belts on School Buses, 74th General Assem. (1984). On the pro side, the Council found only two factors supporting the use of seat belts in buses, (1) riders would be better off restrained than unrestrained in accidents where the bus rolls over, crashes into another object, or stops suddenly and (2) because seat belts are required in cars, seat belts on buses would encourage the habit of buckling-up in school children. *Id.* at 7. On the con side, however, the Council found several reasons that militate against requiring seat belts on buses, including: (1) the increased danger that a small child would be trapped by his or her seat belt in a crash; (2) students could use seat belts as weapons, increasing the risk of accidental injury; (3) seat belts would require an assistant to the driver, thus increasing costs; (4) monitors would be required to ensure that the students wore their belts properly; (5) seat belts would be vandalized, increasing replacement expenses; (6) seat belts would result in a 60% loss of passenger seating capacity, necessitating the purchase of more buses; (7) seat belts do not protect a student's head, neck, face, and upper torso from injury; (8) some seat belt designs could cause injuries to young students' immature anatomies in a crash; and (9) liability insurance for the use of seat belts could be excessive. *Id.* at 7-8. The Legislative Council concluded that the installation of seat belts in school buses should not be mandated by the legislature. *Id.* at 8-9.

Then, in 1985, the legislature enacted legislation requiring school bus drivers to wear seat belts; but, in accordance with the Legislative Council's recommendation, the legislature did not mandate the same for school bus passengers. *See* Ark. Code Ann. § 6-19-109 (Repl. 1999); 1985 Ark. Acts 757 § 5. The General Assembly considered the issue of passenger seat belts on school buses again in 2001, but the proposed bill, which would have mandated seat belts in all school buses purchased after January 1, 2003, died in committee. 2001 Ark. H.B. 1134.

Based upon the legislature's extensive involvement in the regulation of school-bus design and the legislature's repeated

consideration of mandatory seat belts in school buses, we conclude that the legislature has indeed spoken on the issue of whether manufacturers should include seat belts in their bus designs. The Supreme Court of Alabama considered a case involving similar issues in *Dentson v. Eddins & Lee Bus Sales, Inc.*, 491 So. 2d 942 (Ala. 1986). In that case, the plaintiff alleged that, although the Alabama legislature had not mandated seat belts on school buses, the legislature had not conclusively determined that a manufacturer or seller that distributed buses without seat belts could not be held liable under products-liability law. *Id.* Despite the absence of legislative history for the Alabama court to consider, the court concluded that when the legislature decided to require seat belts for school bus drivers, the legislature also considered the issue of passenger seat belts. *Id.* Thus, the Alabama court held that the legislature had impliedly decided that seat belts were not required in school buses, and a manufacturer could not be held liable under products-liability law for failing to install seat belts in school buses. *Id.*

Here, as in *Dentson*, the General Assembly has decided to require seat belts for school bus drivers but not for passengers. *See* Ark. Code Ann. § 6-19-109 (Repl. 1999). In *Dentson*, the Alabama Supreme Court concluded that the legislature's decision to require driver seat belts reflected an implied intent to relieve manufacturers of liability for buses not outfitted with passenger seat belts. In this case, we have clear evidence, in the form of the 1984 report by the Legislative Council *and* the legislation following that report, that the legislature has carefully considered the issue of mandating passenger seat belts in school buses but repeatedly declined to do so.

■ Based upon the statutory and regulatory framework governing the specifications for school bus design in Arkansas, we conclude that the Arkansas General Assembly has affirmatively decided not to require passenger seat belts in school buses. In fact, the General Assembly has expressly stated that the specifications adopted by the Department of Education must be a part of every school bus contract in Arkansas. *See* Ark. Code Ann. § 6-19-102(e) (Repl. 1999). Thus, a manufacturer must comply with those specifications. We hold that the General Assembly has thereby preempted any common-law tort claims against school bus manufacturers that have complied with the Department of Education's design specifications. If we were to hold otherwise, we would risk violating the separation-of-powers doctrine by decid-

ing a public policy question over which the General Assembly has already affirmatively exercised its authority. For these reasons, we affirm the circuit court's summary-judgment order.[2]

Affirmed.

---

[2] In view of our holding that an action cannot be maintained against the school bus manufacturer and distributor, we need not address the other points on appeal.