The Honorable Bill Sample State Representative
2340 North Highway 7 Hot Springs, Arkansas 71909-9309
Dear Senator Sample:
This is my opinion on your questions concerning Garland County's proposed sales-tax bond financing of a new jail. In Op. Att'y Gen. 2009-092, I considered whether the county could levy a specified pay-as-you-go sales tax to finance the jail. The county already levies a sales tax under A.C.A. §§ 26-74-401 to-414 (Repl. 2008, Supp. 2009) ("subchapter 4"). Subchapter 4 provides that proceeds of any additional sales tax must be shared with the county's municipalities. A.C.A. § 26-74-414(b) (Repl. 2008). Revenues of the pay-as-you-go tax must be spent "solely" on the project financed with the tax. A.C.A. § 14-164-340(a)(2) (Repl. 1998). I concluded that subchapter 4 binds the county to share the proceeds of the pay-as-you-go tax. Being required to share, the county cannot satisfy the pay-as-you-go tax's requirement to spend the revenues solely on the project and therefore may not levy the pay-as-you-go tax.
I reconsidered and confirmed my conclusion in Op. Att'y Gen. 2009-168.
Because the requests in Op. Att'y Gen. 2009-092 and 2009-168 proposed the county's use of a single, specified pay-as-you-go tax only, my opinions addressed the application of subchapter 4's additional-tax per capita
distribution provision solely to that tax. In Op. Att'y Gen. 2009-168, I expressly declined to speculate about the provision's application to any other tax, though I did emphasize its broad language. See id. at 4, 5 (the provision's "language is clear and all-encompassing, admitting of no exception.") *Page 2 
You now ask whether subchapter 4's additional-tax percapita distribution provision, or any other statute, prevents the county from issuing bonds to finance building the jail, imposing a sales tax under A.C.A. §§ 26-74-301 to-321 (Repl. 2008, Supp. 2009) ("subchapter 3") or A.C.A. §§ 26-74-201 to-223 (Repl. 2008, Supp. 2009) ("subchapter 2"), and devoting all the net revenues[1] of the new sales tax to pay the bonds (i.e., not sharing the net revenues with the municipalities). You state that the tax would end when the bonds are paid, that any net revenues remaining after payment of the bonds would be shared with the municipalities, and that funds for the jail's operation (as opposed to its construction) would come from sources other than the new sales tax.
RESPONSE
In my opinion, subchapter 4's additional-tax per capita
distribution provision prohibits a county with a subchapter 4 tax from using all the net revenues of a subchapter 3 or subchapter 2 tax for its own purposes and not sharing the net revenues with its municipalities.
Given my answer to your first question, I state no opinion on whether any other statute would generally prohibit the proposed course of action.
Subchapter 4's additional-tax per capita distribution provision states:
 If any county levying a one-half percent (0.5%) tax under the authority of [subchapter 4] subsequently levies any additional sales and use taxes under authority of any other law, the net revenues derived from any such additional levy or levies shall be allocated and distributed to the county and the municipalities in the county on a per capita basis in the manner provided in § 26-74-313.
A.C.A. § 26-74-414(b). *Page 3 
Garland County, having a subchapter 4 tax in effect, clearly is subject to this provision. The meaning of the provision therefore becomes the question.
In Op. Att'y Gen. 2009-168, I acknowledged the argument that A.C.A. § 26-74-313 might be interpreted to permit a county to share only those amounts, if any, remaining after deducting from net revenues the amounts pledged to secure county debt. See
Op. Att'y Gen. 2009-168 at 4. In that connection, I noted that the phrase "net revenues" in subchapter 4's additional-tax percapita distribution provision might be interpreted to mean the amounts, if any, remaining after deduction of bond-pledged amounts from net revenues (as described in footnote 1 hereof). Seeid. Because the questions there at issue involved only a pay-as-you-go tax, however, I stated no opinion on whether those interpretations were correct.
Because the facts of your request do not present the question, I state herein no opinion on whether A.C.A. § 26-74-313 allows a county that is not subject to subchapter 4's additional-taxper capita distribution provision to share only those net revenues, if any, remaining after deduction of amounts pledged to secure county debt.[2] It is my opinion, however, that subchapter 4's additional-tax per capita distribution provision prevents a county that is subject to the provision from taking advantage of any such interpretation, and therefore that the phrase "net revenues," as used in subchapter 4's additional-tax per capita
distribution provision, means gross tax collections less only the amounts charged or retained by the state (i.e., "net revenues" as described in footnote 1 hereof).
In my view, the answer to your questions turns on the meaning of the phrase "per capita basis in the manner provided in § 26-74-313" that appears in subchapter 4's additional-taxper capita distribution provision. The phrase might mean either of two things.
First, it might constitute a requirement primarily that net revenues of additional taxes are to be distributed in the manner directed by the statute referred to, and only incidentally a requirement that they be distributed per capita. Under this interpretation, distribution per capita would be required only to the extent required by A.C.A. § 26-74-313. If the statute sometimes permits distribution other than *Page 4 per capita, then the same distribution would be permissible under subchapter 4's additional-tax per capita distribution provision. If accepted, this interpretation would allow a county with a subchapter 4 tax to take advantage of any favorable interpretation of A.C.A. § 26-74-313 available to a county without a subchapter 4 tax. Accordingly, if a county without a subchapter 4 tax could avoid sharing the net revenues of a subchapter 3 tax under an interpretation of A.C.A. § 26-74-313, then so could a county with a subchapter 4 tax.
Alternatively, the phrase "per capita basis in the manner provided in § 26-74-313" might constitute a requirement primarily that net revenues of additional taxes are to be distributed percapita, with the reference to the statute being only a convenient way to specify the manner in which the required distribution is to be calculated and made. Under this interpretation, the provision would invariably require per capita distribution of net revenues of additional sales taxes imposed by counties with subchapter 4 taxes. The fact that A.C.A. § 26-74-313 might in some instances, with respect to other counties, be interpreted to permit distribution other than per capita, does not alter the fact that A.C.A. § 26-74-313 does, in fact, set forth a manner in which net revenues may be distributed per capita and which may be consulted in calculating such a distribution. Accordingly, under this interpretation, even if a county without a subchapter 4 tax might avoid sharing the net revenues of a subchapter 3 tax under an interpretation of A.C.A. § 26-74-313, a county with a subchapter 4 tax would not be permitted to do so.
In my opinion, the latter is the correct and appropriate interpretation of the phrase at issue.
The phrase "in the manner provided in § 26-74-313," given its placement within subchapter 4's additional-tax per capita
distribution provision and the plain meaning of its language, clearly modifies and describes the phrase "per capita basis," not the phrase "shall be allocated and distributed." In other words, the "in the manner" phrase specifies how a per capita distribution is calculated and made, not how monies are allocated and distributed in general, whether or not per capita.
This interpretation of subchapter 4's additional-tax percapita distribution provision follows the rule of statutory construction that requires that a statute be read to give effect to every word used by the legislature. "We construe [a] statute so that no word is left void, superfluous or insignificant. Meaning and effect are given to every word in the statute if possible."Ward v. Doss, 361 Ark. 153, 159, 205 S.W.3d 767 (2005) *Page 5 
(citation omitted). The alternative interpretation of subchapter 4's additional-tax per capita distribution provision would give no effect at all to the words "on a per capita basis." In other words, if the legislature intended the statute to permit distribution "in the manner provided in § 26-74-313," whether or not that statute requires per capita distribution in every case, then the phrase "on a per capita basis" is superfluous. Nothing more than the phrase "in the manner provided in § 26-74-313" would be needed to produce the desired result.
The interpretation I believe to be correct gives effect to both phrases: net revenues are to be distributed per capita, and the person making the distribution may refer to A.C.A. § 26-74-313 in calculating the amounts to be distributed.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Your request acknowledges that A.C.A. § 26-74-313 (Supp. 2009) and A.C.A. 26-74-214 (Supp. 2009) provide for the state to deduct as a fee, and to retain for stated contingencies, relatively small portions of the gross revenues of subchapter 3 and subchapter 2 taxes, respectively. Your request proposes that the county pledge all tax revenues remaining after these deductions. In this opinion, I refer to this amount as a tax's "net revenues."
[2] My silence on the question is not an endorsement of the argument. Other provisions of subchapter 3, including without limitation A.C.A. § 26-74-306 (Repl. 2008), forcefully suggest that a county may pledge only its per capita share.