

# SUPREME COURT OF ARKANSAS

No. CV-12-89

| | | |
|---|---|---|
| TAMMYE HALL | | **Opinion Delivered** September 19, 2013 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. DR-2010-407] |
| JUSTIN HALL | | HONORABLE VANN SMITH, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Tammye Hall appeals from the circuit court's order, which among other things, denied her motion to increase child support due from appellee Justin Hall.[1] While Justin had cross-appealed from the circuit court's order, we dismissed his cross-appeal on Tammye's motion, holding that Justin's partial payment of the judgment against him constituted a voluntary acquiescence to the judgment. *See Hall v. Hall*, 2012 Ark. 429. As her sole point on appeal, Tammye asserts that the circuit court erred in denying her motion to increase child support. We affirm the circuit court's order.

The parties were divorced on March 1, 2010, by way of a consent divorce decree that included a property-settlement agreement. Pursuant to that agreement, Justin was to pay Tammye $1485 per month based on his weekly net-take-home salary from Falcon Jet, his

---

[1]The circuit court's order also addressed Tammye's multiple motions for contempt and her motion for sanctions, as well as Justin's counterclaim and his countermotion to reduce child support and alimony or for joint custody.

employer. In addition, Justin agreed to pay one-half of the private-school tuition for the couple's two minor children, but not less than $715 per month. In exchange for the tuition arrangement, Tammye agreed not to consider Justin's income from his personal business, Hall Engineering, in setting his child-support obligation.

On May 24, 2011, Tammye filed a motion to increase child support, in which she asserted that there had been a material increase in Justin's Hall Engineering income or alternatively that the original child-support award had been based on figures fraudulently provided by Justin. She further contended that since entry of the divorce decree, one of the couple's children required extensive therapy sessions, enrollment into a different school, and extra parental attention due to a diagnosis of Asperger's Syndrome. Justin responded that Tammye was exaggerating the child's needs and disputed any increase in his income; therefore, he maintained, her motion should be denied.

Following several hearings on the myriad motions filed by both Tammye and Justin, the circuit court entered its order disposing of the motions on October 18, 2011. In it, the circuit court noted Justin's admission in open court that he "hid marital assets from [Tammye] and purposely misrepresented his true financial status from both [her] and the Court." The court found that Justin had "willfully concealed marital funds from [Tammye] in order to decrease the amount of money to be divided" and that Justin's actions were "egregious, calculated, and a direct affront" to the court and to Tammye. The court further observed that Justin had devised a plan to ensure that Tammye would not only be denied her legal right to her portion of the marital funds, but also that it would be practically impossible to discover



his fraudulent concealment.

The circuit court then outlined multiple bank accounts, which Justin had used to hide marital assets. Many of the accounts contained deposits from checks made payable to Justin or to Hall Engineering that Justin held for deposit until after December 21, 2009, the date the parties' assets were to be divided. Ultimately, the circuit court awarded Tammye a total of $125,206.50, plus $37,500 in attorney's fees and $5,985.34 in costs, plus interest at six percent. With regard to child support, the circuit court denied Tammye's motion and found that, while it had been convincingly demonstrated to the court that Justin had concealed "at least $125,000.00 and possibly more, that is attributable as income to sources other than Falcon Jet," Tammye was aware of the difficulty in determining Justin's Hall Engineering income at the time of the divorce decree. The circuit court found that it was unable to determine if the amounts of money concealed by Justin were regular sources of income or one-time payments; it further noted that the funds were derived in at least 2009 and 2010. Although the circuit court denied Tammye's motion, it observed that it would allow Tammye to pursue her claim at a later time upon the proper motion.

Upon the filing of a motion for clarification and ruling by Tammye, the circuit court issued an order disposing of the motion, wherein it amended the judgment due Tammye to $124,698.50. Tammye filed timely notices of appeal from both orders and now brings the instant appeal.

For her sole point on appeal, Tammye argues that the circuit court erred in denying her motion to increase child support. She contends that, while the circuit court found itself

3

Cite as 2013 Ark. 330

unable to determine whether the amounts of money concealed were regular sources of income or one-time payments, such a distinction is irrelevant, as all sources of a payor's income are to be included when determining the amount of child support to be paid. She asserts that she proved a material change in Justin's income, and, therefore, the circuit court was required to modify child support based on that proof. The circuit court's failure to do so, she maintains, constitutes error. Justin responds that there was no material change in circumstances warranting an increase in Tammye's child-support award, because while hidden assets were discovered, ongoing income was not. For this reason, he concludes, the circuit court did not err.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *See id.* As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *See id.* However, a circuit court's conclusion of law is given no deference on appeal. *See id.*

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *See Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006). In addition, the party seeking modification has the burden of showing a change in circumstances. *See id.* In determining whether there has been a change in circumstances warranting

4

SLIP OPINION

adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *See id.* We have made it clear that a finding that a material change in circumstances has occurred is subject to a clearly-erroneous standard of review. *See id.*

In the instant case, the circuit court specifically stated that it "cannot determine if the amounts of money that [Justin] concealed from [Tammye] are regular sources of income or one time payments." This was clearly a misstatement of the law, as this court has not previously drawn a distinction between ongoing income and one-time income. We have defined "income" as "any form of payment, *periodic or otherwise*, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less" certain enumerated deductions. Ark. Sup. Ct. Admin. Order No. 10(II)(a) (2011) (emphasis added). This definition is one that is "intentionally broad and designed to encompass the widest range of sources consistent with this State's policy to interpret 'income' broadly for the benefit of the child." *Ford v. Ford*, 347 Ark. 485, 495, 65 S.W.3d 432, 439 (2002). *See also* Ark. Sup. Ct. Admin. Order No. 10(II)(a)(4). To that end, this court has previously recognized nonperiodic monetary judgments, monetary gifts, certificates of deposit, retirement payments, as well as gambling winnings, as income for purposes of determining child support. *See, e.g.*, *Evans v. Tillery*, 361 Ark. 63, 204 S.W.3d 547 (2005); *Ford*, *supra*; *McWhorter v. McWhorter*,

5

346 Ark. 475, 58 S.W.3d 840 (2001).

That being said, it is clear to this court that the circuit court's erroneous statement of the law was in no way the sole basis for the circuit court's denial of Tammye's motion. The circuit court also found that Tammye was aware of the difficulty in determining Justin's Hall Engineering income at the time of the property-settlement agreement and further found that the discovered funds were derived in at least 2009 and 2010.[2] Because it was for all of these reasons that the circuit court denied any increase "in child support of income from sources other than Falcon Jet," we cannot say, based on the record before us, that the circuit court's denial of the motion was incorrect.

Affirmed.

CORBIN, BAKER, and GOODSON, JJ., dissent.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** In this case, the majority declares that the circuit court made an error of law but nonetheless affirms, apparently holding that the error was harmless because the court gave additional reasons for denying the petition to increase child support that Tammye does not challenge on appeal. Despite the majority's assertion that Tammye does not contest all of the circuit court's findings, Tammye does present argument challenging the entirety of the court's ruling, and none of the reasons offered by the circuit court to deny relief warrant an affirmance of the decision. In my view, this court should reverse and remand for the circuit court to consider the evidence with a renewed understanding of the law and to determine whether the amount of child support

---

[2]Tammye challenges neither finding.

should be modified. Therefore, I respectfully dissent.

The record reflects that, two months after the entry of the consent decree, Tammye filed the first of four motions for contempt seeking to enforce the terms of the decree. During the course of discovery, she uncovered Justin's fraudulent scheme to hide assets as well as income generated from Hall Engineering. In its order, the circuit court made extensive findings detailing the extent of Justin's admitted fraud that was revealed during the course of several hearings and a three-day trial.[1] At least eleven undisclosed bank accounts were discovered. Justin hid money in the reserve account of the law firm of his father, John Wesley Hall, Jr., which had prompted the circuit court to appoint a special master.[2] Justin also manipulated his girlfriend into opening yet another account in which to hide money. In addition, he withheld checks for deposit until after the operative date of the parties' agreement, December 21, 2009.

While in the midst of exposing Justin's deceit, Tammye also moved for an increase in child support. In this motion, she alleged that there had been a material increase in Justin's income from Hall Engineering. Alternatively, she asserted that the agreed–upon amount of support was based on fraudulent figures provided by Justin.

On the issue of child support, Tammye testified that, in agreeing to forgo consideration of Justin's income from Hall Engineering in setting child support, Justin had provided a spread sheet reflecting a gross income of $30,000 earned in 2008. She said that Justin told her that

---

[1]Upon questioning by the circuit court, Justin openly declared that he "did have to play games to hide money from her, but it's because she was spending it like mad."

[2]The circuit court found that Justin's father did not participate in any wrongdoing.

7

this amount did not take into account his expenses and that Justin represented that the business did not make any money. Tammye stated that the $30,000 figure was completely fraudulent and that the bank records now show a gross income of $137,000 for 2008. Tammye also testified that in 2009 the business had gross receipts of $151,000. From that amount, she deducted the expenses of $29,000 that Justin had claimed on his tax return to arrive at a net income of $122,000 for 2009. Tammye further testified that in 2010 she located gross deposits for Hall Engineering in the amount of $283,000. Again, she deducted Justin's claimed expenses of $52,031 to reveal a net income of $230,969 for 2010. In addition to her testimony, Tammye offered an exhibit to tally the amount of child support using the above-mentioned figures. Consistent with Arkansas Supreme Court Administrative Order No. 10(III)(c), she averaged the net income for 2009 and 2010 to arrive at a child–support amount of $3,021.50 per month based on income from Hall Engineering.

In denying Tammye's request for an increase in support, the circuit court found as follows:

90. The Plaintiff argues that she is entitled to an increase in child support based upon Defendant's income from Hall Engineering and his other businesses, excluding his Falcon Jet income. The Plaintiff contends that had she known the Defendant's income was so great, she would not have agreed to accept $715 per month as child support which is used for the children's tuition.

91. It appears that the Defendant's income from Hall Engineering and his other businesses are substantial. In fact, it has been demonstrated to the Court in a convincing fashion that the Defendant concealed at least $125,000 and possibly more, that is attributable as income to sources other than Falcon Jet. On the other hand, however, the Plaintiff was aware of the difficulty in determining the income of Hall Engineering when the Decree was entered into in 2010. The Court cannot determine if the amount of money that the Defendant concealed from the Plaintiff are regular sources of income or one time payments, and notes that the funds were

8

derived in at least 2009 and 2010.

Tammye argues on appeal that the circuit court erred in denying her motion for an increase in child support. In making this argument, she contends that the circuit court erred as a matter of law in ruling that whether the funds were "regular sources of income or one time payments" has some bearing on the calculation of child support. Tammye's argument has merit, and the majority agrees, citing a number of our previous decisions and holding that this court has not drawn a distinction between ongoing income and one-time income for purposes of calculating income in setting child support.

Despite this clear error, the majority affirms the circuit court's decision because the court gave two other reasons for denying the motion. These findings are that Tammye was aware of the difficulty in determining Justin's income from Hall Engineering and that some of the discovered funds were derived in 2009 and 2010. The majority asserts that Tammye does not challenge those findings. However, Tammye's argument does encompass those findings, and she has shown that these findings cannot withstand scrutiny. Citing *Rockefellar v. Rockefellar*, 335 Ark. 145, 980 S.W.2d 255 (1998) (Imber, J., concurring) (citing *Lively v. Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953)), she correctly points out that her agreement to forgo consideration of Justin's income from Hall Engineering is not binding on the circuit court because a court always has the authority to modify child support, even if the parties have entered into an agreement. In arguing for reversal, Tammye also relies heavily on her testimony and the evidence she produced to show that Justin's income from Hall Engineering doubled between 2009 and 2010. Although the circuit court deemed it

irrelevant that Tammye's proof included income earned in 2009 and 2010, the hearing in this case took place in 2011, and the operative date of the parties' agreement was December 2009. Obviously, it was incumbent on Tammye to present evidence of Justin's earnings in 2009 to establish his income as of the date of the property-settlement agreement and to submit evidence of his income in 2010 in an effort to show a change in circumstances.

The record in this case is voluminous, spanning several hearings and a three-day trial. It took a Herculean effort to unravel Justin's deceit and to produce an accounting of Justin's income. Tammye has met her burden on appeal to demonstrate the circuit court's error, and justice demands that this matter be put to rest. Given the circuit court's error, this court should reverse and remand for the circuit court to consider the evidence, to ascertain Justin's income, and to determine whether there has been a material change in circumstances to justify modifying the amount of support.

CORBIN and BAKER, JJ., join.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellant.

*James Law Firm*, by: *William O. "Bill" James, Jr.* and *Lee D. Short*, for appellee.